Robert A. SPENCE, Margaret A. Spence, Plaintiffs–Appellants,

v.

Walter R. ZIMMERMAN, Katherine B. Zimmerman, City of Clearwater, a municipal corporation, et al., Defendants–Appellees.

No. 88–3250.

United States Court of Appeals, Eleventh Circuit.

May 17, 1989.

Jere M. Fishback, Kleinfeld & Fishback, St. Petersburg, Fla., for plaintiffs-appellants.

Milton A. Galbraith, Jr., City Attorney's Office, City of Clearwater, Clearwater, Fla., for City of Clearwater, Shoemaker, Haesaker & Bethel.

Anthony J. Griffith, Fowler, White, Gillen, Boggs, Villareal & Banker, Clearwater, Fla., for Zimmermans.

Before JOHNSON and EDMONDSON, Circuit Judges, and NICHOLS *, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

Robert and Margaret Spence, plaintiffs below, appeal from the district court's order granting summary judgment to defendants for claims based on 42 U.S.C. section 1983 and pendent state claims. We affirm.

*Background*

In 1979 the Spences applied to the City of Clearwater, Florida for a building permit for a single family home in a residential subdivision. In their application, they said that they would be building the house themselves and wished to complete only a portion of the structure before moving in; when the Spences wanted to move in, they would apply to the City for a Temporary Certificate of Occupancy ("TCO"). The City issued the building permit, and Mr. Spence began work at the job site; but six years later construction had progressed so slowly that the structure was still largely incomplete.[1] In 1984 the City declined to issue a TCO, and in 1985 the City told the Spences that their building permit would be revoked if specific items were not completed within six months. Before the six months passed the Spences contracted for the sale of the partially finished house.[2]

*Our Standard of Review*

■ "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) *accord Kramer v. Unitas,* 831 F.2d 994 (11th Cir.1987). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988). As the Supreme Court noted in *Anderson,* "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely *colorable,* or is *not significantly probative,* summary judgment may be granted." *Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2511 (citations omitted) (emphasis added); *accord Brown v. City of Clewiston,* 848 F.2d at 1534. "Summary judgment procedure is properly regarded not as a disfavored procedural short cut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1); *accord Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir.1987).

---

* Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. The Spences do not contend that the City was responsible for the lack of construction progress. Instead they cite financial and other personal difficulties as the cause, including inadequate financing, inadequate manpower, inexperience, loss of job, inadequate time, redesign of building, head and chest injuries, oral surgery, surgery on hand, a broken foot, wife's employment, poor health of Spence's father, and the weather.

2. The deed was transferred on October 1, 1985.

*Civil Rights Violations Under 42 U.S.C. 1983.*

## A. SUBSTANTIVE DUE PROCESS CLAIM

### 1. The Temporary Certificate of Occupancy

The Spences assert that the City's refusal to issue a TCO deprived them of property without substantive due process. Although the contours of substantive due process are vague, no party in this case denies that substantive due process rights exist or that substantive due process can apply to land use decisions. The substantive due process doctrine proscribes "deprivation of a property interest for an improper motive and by means that were pretextual, arbitrary and capricious, and ... without any rational basis." *Hearn v. City of Gainesville*, 688 F.2d 1328, 1332 (11th Cir. 1982), *accord Anthony v. Franklin*, 799 F.2d 681, 684 (11th Cir.1986).

To support a claim under the fourteenth amendment for deprivation of property without due process of law, the Spences must first establish that they had a valid "property interest" in some benefit that was protectible under the fourteenth amendment at the time they were deprived. *Scott v. Greenville County*, 716 F.2d 1409, 1418 (4th Cir.1983). Mere abstract need or desire for a benefit will not create a protectible property interest; instead there must be a legitimate claim of entitlement to the expected benefit. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). No property interests are created by the Constitution; such interests are created by "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* We conclude that the Spences never had a property interest in a TCO.

The relevant rule is section 109.3 of the Standard Building Code, used by the City of Clearwater, stating that "[a] temporary certificate of occupancy *may* be issued for a portion or portions of a building which may be safely occupied prior to final completion of the building." (emphasis added). In April 1984 when the Spences applied for the TCO, they admitted that the structure was incomplete and unsafe and agreed to perform the essential work if the City would allow them to move in. At that time, necessary electrical panels and circuits were absent; the hot water heater, stove, bathing facilities and heating system were missing; interior walls were unfinished; and no insulation existed inside or out.

The Spences claim that after they submitted their application, the City bowed to pressure from the subdivision's homeowners' association and illegally increased the TCO requirements to include certain requirements that were also in the subdivision's restrictive covenants. The Spences admit they never met reasonable minimum housing code standards for safe occupancy of the building. For example, they never installed a shower facility, a heating system other than a small fireplace, a cooking stove, an electrical panel connected with the electrical power supply, interior walls or insulation. The Spences do not dispute that the City had every right to require that they meet reasonable minimum safety requirements before a TCO would be issued. They take issue instead with the City's addition of requirements that the Spences claim go beyond safety requirements for the structure.

In *Littlefield v. City of Afton*, 785 F.2d 596, 602 (8th Cir.1986), the Eighth Circuit held that state law creates a constitutionally protectible property interest in a building permit if (1) the municipality lacks discretion and must issue a building permit to an applicant who complies with the statutory requirements *and* (2) the applicant has fulfilled the requirements. *Accord Carolan v. City of Kansas City*, 813 F.2d 178, 181 (8th Cir.1987) (noting that both conditions must be met before a constitutionally protected property interest in a building permit arises). We agree with the Eighth Circuit and extend its reasoning to TCOs.

We note first that the Building Code states that a TCO *"may* be issued," indicat-

ing that the municipality has discretion whether to issue the TCO. *See Sullivan v. Town of Salem*, 805 F.2d 81 (2d Cir.1986) (no legitimate expectation or entitlement where statutory authority to have subdivision roads accepted is couched in discretionary "may" and not mandatory "shall" language). We know of no Florida court decision holding that a municipality must provide for TCOs or if they are provided for that their issuance is mandatory in certain circumstances. The Spences have thus failed to meet the first part of the test.

The Spences also have failed to make any showing that they met the safety requirements for a TCO; therefore, they do not meet the second part of the test. The Spences have not demonstrated that but for the alleged addition of new and improper TCO requirements, the city's officers would have been required to grant them the TCO; therefore they have shown no legitimate claim of entitlement to the TCO. *See Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 59 (2d Cir.1985). The City could legitimately require the Spences to meet reasonable safety standards before issuing them a TCO. Even if the City could not legitimately ask that additional requirements unrelated to safety be met before issuing a TCO, the Spences' interest in the TCO was nothing more than an abstract need or desire for a benefit until they met at least the minimum requirements for the TCO.[3] Such abstract need or desire does not amount to a property interest that is protectible under the due process clause. The district court correctly granted summary judgment on this issue. *See Roth*, 408 U.S. at 577, 92 S.Ct. at 2709; *Yale Auto Parts*, 758 F.2d at 60.

### 2. The Building Permit

By a March 1, 1985 letter, Building Director Edward Bethel told the Spences that unless various conditions were met within six months—installing a driveway, sodding the yard, finishing the exterior of the structure, installing sidewalks, and removing all construction materials from the outside of the structure—the building permit would be revoked. The Spences, seemingly unable to meet these conditions despite the structure having been under construction for six years, contracted to sell the incomplete structure before the six months expired. The sale price, they claim, was $70,000 less than the house's fair market value.

■ The Spences argue that they were denied substantive due process because they were deprived of a property interest—their building permit—arbitrarily and irrationally. Assuming that the Spences had a protectible property interest in the building permit, we conclude that the Spences' substantive due process rights were unviolated. The only act the Spences cite in support of their contention that they were deprived of property without due process is the March 1, 1985 letter from Bethel informing them that their building permit *would be* revoked in six months *if* certain conditions were not met. The Spences have failed to show that they were unentitled in the meantime to continue construction under the permit; no reasonable interpretation of the letter would indicate that it contemplates anything other than future action by the City. The City never revoked the permit and, because the Spences sold the house, never had to face the question of what would happen if the conditions imposed had not been satisfied in the time allowed. We conclude that the Spences have failed to make an adequate showing that they have been deprived of property without due process. *See Kerley Industries, Inc. v. Pima County*, 785 F.2d 1444 (9th Cir.1986) (no deprivation of property without due process where owner was entitled to use permit).

We alternatively conclude that even if the Spences were deprived of the permit, they have not adequately shown an abuse of government power. The evidence is in-

---

**3.** The Spences also contend that they had an oral contract with the City that the City would issue the TCO upon their meeting minimum housing code requirements in their new home. We do not decide whether such a contract exist-

ed, but conclude that the Spences have failed to show that the City breached any duty to perform under the agreement because the Spences never demonstrated that they met minimum housing code requirements.

sufficient to support a finding that the City was acting with an improper motive or was acting arbitrarily or capriciously without rational basis for its actions. The City's actions were not such an abuse of governmental power that would raise the withdrawal of the permit to the stature of a constitutional violation. *Cf. Hull v. City of Duncanville*, 678 F.2d 582 (5th Cir.1982) (municipality's intentional or negligent nonenforcement of ordinance resulting in injury of child at train crossing not sufficiently egregious to be constitutionally tortious).

Municipal building permits do not have to extend forever. The Standard Building Code section 106.3, titled *Conditions of the Permit*, stated that "Every permit issued shall become invalid unless the work authorized by such permit is commenced within six (6) months after its issuance, or if the work authorized by such permit is suspended or abandoned for a period of six (6) months after the time the work is commenced,...." The City was troubled about the Spence situation, in which a permit had been issued five years earlier to build a one-family house in a well-kept neighborhood and Spence did just enough work to receive an inspection every six months to keep the permit alive.[4]

After five years, the house was approximately one-half completed; because there was no landscaping, grading, or driveway, silt ran onto a neighbor's yard and into the street. The citizens of the community were distressed, worried and complaining about their property values. The City could rationally care that a structure that was only half-completed after five years presented a problem with rodents, tran-sients, sand erosion or vandals, injuring the surrounding neighborhood economically, environmentally, and aesthetically. Avoidance of such harms is a constitutionally permissible objective. *Jackson Court Condominiums v. City of New Orleans*, 665 F.Supp. 1235 (E.D.La.1987); *see also Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 73, 96 S.Ct. 2440, 2453, 49 L.Ed.2d 310 (1976) (acknowledging city's interest in preserving character of neighborhoods); *Village of Belle Terre v. Boraas*, 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1974) (police power not "confined to elimination of filth, stench, and unhealthy places," but extends to zoning areas "where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people"); *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954) (concept of public welfare represents spiritual and aesthetic values); *City of Lake Wales v. Lamar Advertising Ass'n*, 414 So.2d 1030 (Fla.1982) (zoning solely for aesthetic purpose not outside police power); *City of Lewiston v. Knieriem*, 107 Idaho 80, 685 P.2d 821 (1984) (acknowledging that zoning to protect property values is valid exercise of police powers).

■ The City could rationally conclude that the building code did not intend for a building permit, once issued, to continue indefinitely. Even though there was no time limit expressed, the City could rationally interpret the Code to require that permitted construction must be substantially completed within a reasonable time of the permit's issuance.[5] *Cf.* 7 P. Rohan *Zoning*

---

4. Because of its concern, the City wrote to the Executive Director of the Building Code Congress for an interpretation of the Code: "I realize Section 106.3 does not address this situation as strictly interpreted, but it is hard to believe the intent of the code is to allow construction to go on for this length of time in any neighborhood." Letter from Edward Bethel, Director, Bldg. Inspection Dept. to William Tangye, Executive Director Southern Building Code Congress International (May 14, 1985). The Manager of Codes replied that although no official interpretation was on the books, the Code intended to require work to be done in a timely manner and that should Bethel exercise his right to revoke the permit, the parties could solve the problem at the Board of Appeals. Letter from Richard A. Vognild, Manager/Codes to Edward Bethel, Director Bldg. Inspection Dept. (May 20, 1985).

5. If the City officials incorrectly applied the building code language in their decision to put conditions on the continuation of the building permit (and we do not decide that question), we stress that not every wronged party has a valid claim for a constitutional violation whenever a local building official makes an incorrect decision regarding a building permit. *See Brady v. Town of Colchester*, 863 F.2d 205 (2d Cir.1988); *Rymer v. Douglas County*, 764 F.2d 796 (11th Cir.1985) (there must be abuse of government

*and Land Use Controls* sec. 48.01[3] (1988) (if no time limit fixed, permit must be exercised within reasonable period after issuance); *Trans–Oceanic Oil Corp. v. City of Santa Barbara*, 85 Cal.App.2d 776, 194 P.2d 148 (1948) (where permit for oil well fixed no time within which well was to be drilled, permit holder had reasonable time in which to drill the well); *Richland Grove & Cattle Co. v. Easterling*, 526 So.2d 685 (Fla.1988) (where no time stated for service to be performed, parties to contract intended reasonable time); *Fleming v. Burbach Radio, Inc.*, 377 So.2d 723 (Fla.App.1979) (where contract specified no time limit for performance, party charged with performance must act within reasonable time).

Finally, the conditions placed on continuation were not unrelated to land use planning, but were rationally related to the City's protection of its neighborhoods. *Compare Pace Resources, Inc. v. Shrewsbury Township*, 808 F.2d 1023 (3d Cir.1987) (where only factual allegations were that zoning changes did not conform to guidelines of comprehensive plan, plaintiff did not present case showing township's actions were for reasons unrelated to land use planning; therefore action was not irrational and hence not violative of substantive due process) *and Creative Environments, Inc. v. Estabrook*, 680 F.2d 822 (1st Cir.1982) (where plaintiff urged that town misapplied state law to protect town's basic character but did not show fundamental procedural irregularity or racial animus, claim does not rise to due process violation) *with Bello v. Walker*, 840 F.2d 1124 (3d Cir.1988) (evidence that council members interfered with process by which building permits are issued for partisan political or personal reasons is sufficient due process violation). From the record, it cannot be said therefore that the City was acting with an improper motive; nor was it acting arbitrarily, capriciously or irrationally.

This kind of ordinance enforcement decision is not the stuff of which constitutional violations are made.[6] *See Lemke v. Cass County*, 846 F.2d 469 (8th Cir.1987) (Arnold, J., concurring) (to hold that city's violation of ordinance in zoning decision gives rise to constitutional tort under sec. 1983 would destroy distinction between state and federal law and turn federal district courts into zoning boards of appeal). Thus, even were we to hold that the Spences were deprived of their permit, such deprivation was not a violation of substantive due process. *Cf. Shelton v. City of College Station*, 780 F.2d 475, 482 (5th Cir. 1986) (rejecting proposal that would limit state's police power by allowing federal trier of fact to set aside zoning decision court believed was arbitrary and capricious even if there was articulated, rational basis for decision).

## B. EQUAL PROTECTION CLAIM

The Spences contend that the City's actions violated their equal protection rights under the fourteenth amendment. We disagree. The equal protection clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)).

In this case, the Spences have shown no one similarly situated who has been treated more favorably. No other single-family lot owner had spent six years constructing a bare shell that was unfit to live in, yet demanded the right to live in it and build it around him at his convenience. Building Director Bethel stated that in his thirty-eight-year experience—including the years before he was employed by the City of Clearwater—he had never issued a TCO for a single family residence. Assistant City

---

power sufficient to raise ordinary tort to constitutional violation).

**6.** Because we conclude that the Spences had no protectible property interest in the TCO and were never deprived of the building permit, we do not address the Spences' claim that they have been deprived of a property interest without

procedural due process. For the same reasons, we conclude the district court correctly denied the Spences' motion to amend their complaint to add a claim that the City's action resulted in a taking of their real property without just compensation.

262

Manager Haeseker stated that she knew of perhaps three single family TCOs that had been issued during her seven-year tenure with the City. In those instances, all construction had been completed except for the sidewalks, and the City had put money in escrow to construct the sidewalks if the owner did not do so.

The Spences were not in the same situation as those persons issued a TCO for a single family residence and have thus completely failed to show how the City's denial of the TCO deprived them of equal protection under law. *Compare Cordeco Development Corp. v. Santiago Vasquez,* 539 F.2d 256 (1st Cir.1976) (upholding equal protection violation when plaintiff accused defendants of failing to act on sand excavation permit but granting permits to politically influential family for excavation of five adjacent parcels) *with Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54 (2d Cir.1985) (insufficient allegations of equal protection violation where junkyard operator alleged that zoning board wanted his application "killed" but did not allege that others were treated differently) *and Beacon Syracuse Associates v. City of Syracuse,* 560 F.Supp. 188, 199 (N.D.N.Y.1983) (dismissing equal protection claim for failure to allege manner in which plaintiff was treated differently from those similarly situated).

We stress that federal courts do not sit as zoning boards of review and should be most circumspect in determining that constitutional rights are violated in quarrels over zoning decisions. *Raskiewicz v. Town of New Boston,* 754 F.2d 38, 44 (1st Cir.1985) ("federal courts do not sit as a super zoning board or zoning board of appeals"); *Albery v. Reddig,* 718 F.2d 245 (7th Cir.1983) (federal appeals court should not become accustomed to idea that constitutional rights are implicated in quarrel over zoning rules); *Scott v. Greenville County,* 716 F.2d 1409 (4th Cir.1983) (noting reluctance of federal courts to sit as zoning boards of appeal). None of the

claims advanced by appellants warrant reversing the district court's order granting summary judgment.[7] Accordingly, the district court's order is AFFIRMED.

---

**7.** We conclude that the other claims raised by appellants are meritless, although we do not discuss them in this opinion.