[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15147
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cv-01832-KOB

CODY ETHERTON,
HOPE ETHERTON,

Plaintiffs-Appellants,

versus

CITY OF RAINSVILLE,
NICK JONES,
BRANDON FREEMAN,
MELISSA LEDBETTER,
ROGER LINGERFELT,
JOSEPH GRAHAM,
DAVID HOLT,
RICHARD GIBSON,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(September 26, 2016)

Before TJOFLAT, HULL and JILL PRYOR, Circuit Judges.

PER CURIAM:

Cody and Hope Etherton, appearing pro se, appeal the district court's order granting the defendants' motion to dismiss their complaint.  The Ethertons' Complaint raised a variety of federal and state-law challenges to the application of a municipal zoning ordinance to their property, a poultry and cattle farm located at 421 Kain Avenue in Rainsville, Alabama ("the Property").  Upon careful consideration and a thorough review of the record, we affirm.

## I.  BACKGROUND

### A.    The Zoning Ordinance Amendment

In 2001, the City of Rainsville ("the City") amended its Zoning Ordinance to, inter alia, specifically prohibit poultry farming as a permitted use for agricultural property in the City.[1]  Rainsville Ordinance No. 3-19-01-B, § A.7. Nonetheless, the Zoning Ordinance, as amended, permits a landowner to seek a "special exception" allowing him to operate a poultry farm.  Rainesville Zoning Ordinance § 4-8-2 (including "chicken farms" within the list of uses that require a special exception in an agricultural district).  Id.  In order to receive a special

---

[1]The 2001 amendment states, in relevant part:
   Agricultural uses [include] the raising of crops and livestock.  There is specifically prohibited as a permitted use hog farms, chicken farms, feed lots for cattle and other similar types of farming where animals are concentrated in a relatively small area or housed within a building.
Rainsville Ordinance No. 3-19-01-B, § A.7.

2

exception, a landowner has to file a special exception application, pay a $200 application fee, notify adjoining property owners of his application, and present his application at a public hearing before the Zoning Board of Adjustment.  Zoning Ordinance § 7-4-3.  After determining that the application is properly before it, the Zoning Board of Adjustment may then grant or deny the special exception.  Id. Unsuccessful applicants may challenge the Board's determination in state court. Zoning Ordinance § 7-5.

Sections 5-2-2 and 5-2-4 of the Zoning Ordinance provide that non-conforming uses of property existing at the time of an amendment to the Ordinance may be continued (or be "grandfathered-in") so long as certain requirements are met.  Rainsville Ordinance No. 3-19-01-B, § 8.  Additionally, §§ 7-3 and 7-4-1 of the Zoning Ordinance provide that an aggrieved landowner has the option of challenging zoning decisions by the City's "Administrative Officer" before the Board of Adjustment.[2]

## B.    Facts and Procedural History

---

[2]Section 7-3 states, in relevant part:

> Appeals to the Board of Adjustment concerning interpretation or administration of this Zoning Ordinance or for Variance under this Zoning Ordinance may be taken by any person aggrieved or by any officer, agency, or bureau of the City of Rainsville affected by any decision of the Administrative Officer.

Zoning Ordinance § 7-3.  Section 7-4-1 states that the "Zoning Board of Adjustment" has the power "[t]o hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by the Administrative Officer in the enforcement of this Ordinance."  Zoning Ordinance § 7-4.

3

As the parties are familiar with the facts of this case, we do not recount them in detail. We include only the facts necessary to the discussion of the issues. Harold and Kathy Owens owned and operated a cattle and poultry farm on the Property prior to and following the 2001 amendment, and sold the Property to the Ethertons in 2005 (along with all rights associated with the Property). The Ethertons continued to operate the poultry and cattle farm.

The Ethertons decided to sell the Property in January 2014. In June 2014, potential buyers Dale and Sherri Jones contracted to purchase the Property from the Ethertons for $850,000. In July 2014, Richard Gibson, the City's Revenue and Zoning Officer, informed the Joneses that they would have to apply for a special exception in order to raise chickens on the Property. As a result, the Joneses became no longer interested in the Property, and the Ethertons released them from their contract.

Also in 2014, Buddy and Tony Goolesby expressed interest in purchasing the Property. The Goolesbys learned that while the Ethertons' poultry-farming operations were grandfathered-in under the Zoning Ordinance, this would not extend to the Goolesbys. Instead, the Goolesbys would need to apply for a special exception to operate a poultry farm on the Property. The Goolesbys stopped negotiations with the Ethertons.

4

In August and September 2014, the Ethertons met with and wrote to City officials including Zoning Officer Gibson, Mayor Nick Jones, and members of the Rainsville City Council. The Ethertons took the position that it was unnecessary for their potential purchasers to seek a special exception to operate a poultry farm on the Property. The City officials disagreed. During one meeting, Mayor Jones urged the Ethertons to themselves apply for a special exception; the Ethertons refused.

On September 26, 2014, the Ethertons, proceeding pro se, filed a civil rights complaint against the City, Mayor Jones, Zoning Officer Gibson, and members of the Rainsville City Council. The Complaint was amended three times prior to its dismissal in October 2015; in its final form, it asserted numerous claims arising under federal and Alabama constitutional and statutory provisions.

The Etherton's Complaint challenged, inter alia, Zoning Officer Gibson's determination ("Officer Gibson's determination") that after the Ethertons sold the Property, the new owners would need a special exception in order to continue as a poultry farm. They claimed that their non-conforming use of the Property was a "vested right" that was transferrable to their successors and could not "be divested without compensation." They further claimed that the defendants' decision—that the new zoning ordinance would be enforced as to the new owners—interfered with their attempts to sell the Property and forced the Property into foreclosure.

5

The district court dismissed all of the Ethertons' claims.  On appeal, the Ethertons challenge the dismissal of their federal claims, and assert two new claims for the first time.

## II.  LEGAL STANDARD

We review de novo a district court's grant of a Rule 12(b)(6) motion to dismiss, accepting all factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff.  Butler v. Sheriff of Palm Beach Cnty., 685 F.3d 1261, 1265 (11th Cir. 2012).  We also review de novo whether a case is ripe for adjudication.  Elend v. Basham, 471 F.3d 1199, 1204 (11th Cir. 2006).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted).  While the complaint need not contain "detailed factual allegations," the factual allegations must be enough "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007).  "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed."  Bingham v. Thomas, 654 F.3d. 1171, 1175 (11th Cir. 2011) (quotation marks omitted).

## III.  ANALYSIS

## A.    Takings Claim

The Ethertons argue that the district court erred in dismissing their takings claim because the defendants' enforcement of the special exception requirement caused them to lose their contract to sell their property.  The Ethertons assert that contractual rights are protected from government intrusion without due process, and contend that defendants' actions both infringed on their right to contract and cost them all their "rights" in their contract with the Joneses (including their "vested right" to its proceeds).[3]

A landowner states a claim for a per se regulatory taking of his property where he alleges that: (1) government action has denied him "all economically beneficial or productive use of his property" (making it "worthless") and (2) he cannot obtain just compensation under state procedures or that available state procedures are "inadequate."  Agripost, Inc. v. Miami-Dade Cnty., 195 F.3d 1225, 1231 (11th Cir. 1999) (quotation marks omitted).  The district court correctly ruled that the Complaint failed to state a claim that the Ethertons' land was subject to this type of taking, as there is no indication in the Complaint that Officer Gibson's determination stripped the Property of all productive use.  The Ethertons'

---

[3]At the time the Complaint was filed, the Property was already in foreclosure (although it had not yet been sold).  Officer Gibson's determination—that new owners would need a special exception—had already had an alleged impact.  We conclude that whether or not appealing Officer Gibson's determination to the Zoning Board of Adjustment would strictly have been futile, the impact was definite enough for the Ethertons' claims to ripen even without a more final or formal decision.  We herein address the Ethertons' claims solely on the merits.

subsequent failure to sell to two potential buyers does not suggest that the Property was rendered worthless; indeed, the Complaint undercuts this notion by stating that the Ethertons' farm provides them with "lawful income" and that the Property could be sold in a foreclosure sale, albeit at a "considerable discount."[4]

The Ethertons alternatively stress that the "taking" here was of their contract with the Joneses, not of their Property per se. This Court has recognized that contracts can be property subject to an unconstitutional taking. See Vesta Fire Ins. Corp. v. Florida, 141 F.3d 1427, 1431 n.8 (11th Cir. 1998) (discussing insurance contracts). However, the defendants' enforcement of existing zoning law, enacted in 2001, did not in itself "take" the Ethertons' 2014 contract with the Joneses. It simply discouraged the Joneses from moving forward by enforcing an existing legal restriction on what they as new owners could do with the Property after purchasing it unless they obtained a special exception. The defendants' conduct apparently did not affect the Jones contract's enforceability; it was the Ethertons who decided to release the Joneses from their obligations after the agreement was

---

[4]We may also find that regulatory taking has occurred, even where property has not been rendered worthless by a regulatory action. Factors we weigh in making this determination include: (1) the economic impact of the challenged regulation on the landowner; (2) the extent to which the regulation interferes with investment-backed expectations; and (3) the nature of the challenged action. See Vesta Fire Ins. Corp. v. Florida, 141 F.3d 1427, 1431 (11th Cir. 1998) (citing Connolly v. Pension Benefit Guar. Corp., 475 U.S. 211, 106 S. Ct. 1018 (1986)). Given that the City's determination did not actually affect how the Ethertons themselves used the Property, we cannot find a taking even weighing these factors.

already signed.  We find no support for ruling that there was a "taking of a contract" on these alleged facts in this particular case.

Accordingly, the Ethertons' takings claim fails on the merits and was properly dismissed.

## B.    Equal Protection Claim

To sufficiently state a "class of one" equal protection claim (one not based on a plaintiff's membership in a protected class), a plaintiff must allege that the defendants "intentionally treated [him] differently from others similarly situated" and "there [was] no rational basis for the disparate treatment."  Griffin Indus. v. Irvin, 496 F.3d 1189, 1202 (11th Cir. 2007) (quotation marks omitted).  "[T]o avoid constitutionalizing every state regulatory dispute, we are obliged to apply the 'similarly situated requirement with rigor.'"  Id. at 1207 (quoting E & T Realty v. Strickland, 830 F.3d 1107, 1109 (11th Cir. 1987)).  Furthermore, a "[m]ere error or mistake of judgment when applying a facially neutral statute does not violate the equal protection clause.  There must be intentional discrimination."  E & T Realty, 830 F.3d at 1114 ("The requirement of intentional discrimination prevents plaintiffs from bootstrapping all misapplications of state law into equal protection claims.").

The district court properly dismissed the Ethertons' equal protection claim, which is based on the different treatment between the Owneses and themselves.

9

The Ethertons' Complaint, however, did not contain sufficient allegations that the Owenses and the Ethertons were similarly situated.  First, the Owenses owned the Property and operated a poultry farm upon it before the passage of the 2001 Ordinance.  Thus, the Owenses' status (as "grandfathered in" owners) in 2005, when they sold the Property to the Ethertons, was not the same as the Ethertons' status in 2014, when they were negotiating to sell the Property to either the Joneses or the Goolesbys.  Second, the Complaint contains detailed allegations about numerous discussion with City officials about the Joneses' and the Goolesbys' plans to purchase the Property and operate a poultry farm, but there are no similar allegations that either the Owenses or the Ethertons sought the City's input before the 2005 sale of the Property or that the City knew of the Ethertons' plans to continue to use the Property to operate a poultry farm.

In any event, even if the Owenes and the Ethertons were similarly situated, the Complaint does not plausibly allege that the City's different treatment of them was intentional, rather than the result of a mistake.  The Complaint alleges merely that the City enforced the special exception requirement against the Etherton's prospective purchasers, but not against the Ethertons as the Owenes' purchaser.  But, bare allegations of unequal enforcement are not enough to state a "class of one" equal protection claim.  See Griffin Indus. v. Irvin, 496 F.3d at 1207; E & T Realty, 830 F.3d at 1114.

10

**C.    Substantive Due Process Claim**

The Ethertons argue that the district court erred in dismissing their substantive due process claim because the defendants' application of the special exception requirement violated their fundamental liberty right to be free from unauthorized governmental intrusion (which includes their right to contract).  The Ethertons stress that the defendants acted "arbitrar[ily] and capricious[ly]," and that they unlawfully converted the Ethertons' right to contract into a privilege and "placed a fee thereon."

We have held that "non-legislative deprivations of state-created rights, which would include land-use rights, cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrar[il]y and irrationally."  Greenbriar Village, LLC v. City of Mountain Brook, 345 F.3d 1258, 1263 (11th Cir. 2003).  The Ethertons challenge an executive action enforcing a zoning ordinance that implicates state-created land use rights; in this respect, it does not give rise to substantive federal due process claims.  See id.  The City's determination also did not actionably burden the Ethertons' right to contract with the Joneses (or the Goolesbys) or any cognizable right they would have to the proceeds of the contract they entered.  This claim was properly dismissed.

**D.    Procedural Due Process Claim**

11

The Ethertons argue that the district court erred in dismissing their procedural due process claim because the defendants' application of the special exception requirement to the Property was "arbitrary" and violated their procedural rights. The Ethertons stress that they were under no legal duty to pursue the special exception process because this process "would violate their rights." The Ethertons also argue that they were not required to "exhaust[] administrative remedies."

A claim alleging a denial of procedural due process has three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003). Importantly, to state a claim for violation of procedural due process, a plaintiff must allege that the state refused to provide a process sufficient to remedy the deprivation. See Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1294 (11th Cir. 2007).

The district court correctly found that the Ethertons failed to state a procedural due process claim. First, the challenged determination did not deprive the Ethertons of a constitutionally-protected interest in the Property, as it did not itself affect the Ethertons' use of their property (it only required their successors to seek an exception to operate a poultry farm). Second, to the extent that the determination burdened some cognizable right related to the Ethertons' contract

12

with the Joneses, procedures existed through which the Ethertons could have sought a remedy; specifically, they could have challenged Officer Gibson's determination before the Zoning Board of Adjustment pursuant to §§ 7-3 and 7-4-1 of the Zoning Ordinance.  Thus, the Ethertons failed to state a viable claim that they were denied procedural due process.

### E.    Qualified Immunity

Qualified immunity protects government officials sued in their individual capacities from liability for acting within the scope of their discretionary authority where their conduct "violates no clearly established statutory or constitutional rights of which a reasonable person would have known."  Jordan v. Mosley, 487 F.3d 1350, 1354 (11th Cir. 2007) (quotation marks omitted).   The immunity protects "all but the plainly incompetent or those who knowingly violate the law." Id. (quotation marks omitted).

The district court did not err in finding that the individual defendants were entitled to qualified immunity.  These defendants are not alleged to have done anything other than perform discretionary functions of their offices; moreover, the Ethertons have failed to show that their constitutional rights were violated in any way, much less in a way that was clearly established at the time.

### F.    Newly Raised Claims

For the first time on appeal, the Ethertons claim that the challenged amendment to the Zoning Ordinance is unconstitutionally vague and that it infringes on their covenant of quiet enjoyment.  Although we liberally construe pro se filings, we disagree with the Ethertons that these issues were properly raised in district court.  Furthermore, we generally do not consider issues raised for the first time on appeal that the district court was not given an opportunity to consider.  Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1332 (11th Cir. 2004).  While under certain circumstances it may be appropriate to exercise discretion and consider newly raised issues, see id., we find none of those circumstances exists here.  We decline to review the Ethertons' newly raised claims.

**AFFIRMED.**

14