[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14789
_____

D.C. Docket No. 8:10-cv-00819-SDM-TBM


HILLCREST PROPERTY, LLP,

Plaintiff - Appellee,

versus

PASCO COUNTY,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 13, 2019)

Before TJOFLAT, MARCUS, and NEWSOM, Circuit Judges.

TJOFLAT, Circuit Judge:

The question before us is whether a litigant in this Circuit has a substantive-due-process claim under the Due Process Clause of the Fourteenth Amendment when the alleged conduct is the unlawful application of a land-use ordinance.  The

answer to that question is a resounding "no"—an answer that this Court delivered in *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) (en banc), 24 years ago and has reaffirmed ever since. We held in *McKinney* that executive action never gives rise to a substantive-due-process claim unless it infringes on a fundamental right. A land-use decision is classic executive, rather than legislative, action—action that, at least here, does not implicate a fundamental right under the Constitution.

## I.

We start by reviewing the ordinance at issue. We then discuss the application of that ordinance to Plaintiff Hillcrest Property and the specific events that give rise to this appeal.

## A.

Pasco County ("the County") passed Ordinance No. 11-15 ("the Ordinance") "to preserve, protect, and provide for the dedication and/or acquisition of right-of-way and transportation corridors that are necessary to provide future transportation facilities and facility improvements to meet the needs of [projected] growth."[1] Pasco County, Fla., Land Development Code ch. 900, § 901.2(A)(2). The County found that "provision of an adequate transportation network is an essential public

---

[1] A transportation corridor is "part of a network of transportation facilities and systems which provide mobility between and access to businesses, homes, and other land uses throughout the jurisdiction, region, and State." Pasco County, Fla., Land Development Code ch. 900, § 901.2(A)(2).

service." *Id.* § 901.2(A)(2).  The Ordinance aimed "to protect transportation corridors from encroachment by structures or other development except under special conditions." *Id.* § 901.2(A)(6).  It applies to all development of land that is located on the County's corridor-preservation map.  *Id.* § 901.2(B)(1).

The corridor-preservation map includes all of the land that the County believes will be required to adequately provide transportation, regardless of who currently owns the land.  When an entity seeks a development permit for land that adjoins a transportation corridor, the County, as a "condition of approval," capitalizes on that need by requiring a right-of-way dedication, which is a dedication by the entity to the County of lands "within the development site or expanded development site which are within the transportation corridor." *Id.* § 901.2(H)(1).  The dedications must be "in accordance with the County Real Estate Division requirements and free and clear of all liens and encumbrances." *Id.* Importantly, the land to be dedicated is "limited to the amount of land needed for the planned transportation improvements."[2] *Id.*

The Ordinance contemplates that disputes might arise between the entity and the County and provides for waiver and appeal.  An entity that believes that the

---

[2] The amount of land needed is determined by the "Metropolitan Planning Organization and Comprehensive Plan transportation element plans in effect at the time of dedication," or if no plans exist, by the "County-approved traffic study and collector/arterial spacing and design standards for the development approval or development permit/order." *Id.*

County's demanded dedication "exceeds the amount of land that is roughly proportional to the transportation impacts to be generated by the proposed development site" may apply to the development review committee for a "dedication waiver." *Id.* The procedures for seeking a waiver are largely the same as those for seeking a variance.[3] *Id.* ch. 900, § 901.2(I)(2)(a). In its application for a waiver, the entity must include the appraised value of the development site and expanded development site, both before and after approval of the development;[4] a traffic-impact study; and a list of transportation-mitigation measures taken or required to be taken. *Id.*

The committee, upon finding that the "transportation requirement is not roughly proportional to the transportation impacts of the proposed development site or expanded development site" or that "any portion of the land required to be dedicated . . . exceeds the amount of land that is roughly proportional to the

---

[3] A variance is "limited relief" when "strict application" of the County's code would "create an unnecessary hardship" or would "render the land difficult to use because of some rare and unique physical attribute of the property itself or some other factor unique to the property for which the variance is requested." *Id.* ch. 400, § 407.2(A)(1).

[4] The development site is the "total area of the lot, tract, or parcel which is the subject of an application for a Development Permit." *Id.* § 901.2(D)(2). The expanded development site is

all development, parcels of land, lots, and tracts, including development, parcels of land, lots, and tracts contiguous to or nearby the development site that are (1) developed by the same or a related developer or landowner; or (2) developed as part of the same zoning plan, preliminary plan, preliminary site plan, plat, or other unified or common plan or development.

*Id.* § 901.2(D)(3).

transportation impacts of the proposed development site or expanded development site," may proceed in one of two ways. *Id.* § 901.2(I)(4). One, it can authorize compensation for the excess land. *Id.* Two, if it elects not to authorize compensation, it must not require the entity to dedicate the excess land and must permit it to use that land subject only to other generally applicable zoning restrictions. *Id.*; *see also id.* § 901.2(I)(6).

The entity may appeal the committee's decision to the Board of County Commissioners. *Id.* § 901.2(I)(2)(a).

And this brings us to Hillcrest.

### B.

Hillcrest Property owns 16.5 acres of undeveloped, commercially zoned land in Pasco County, Florida.

In December 2006, Hillcrest applied to the County to develop its property with a 83,000 square-foot retail shopping center and three commercial spaces. Just over one year later, in February 2007, the County notified Hillcrest that pursuant to the Ordinance, it would require the dedication of 50 feet for the future development of State Road 52 ("the Road") into four lanes.[5] The property at issue shares a 1,400-foot border with the Road. Just a few months later, in May, the

---

[5] As Hillcrest points out, however, the Comprehensive Plan designated the road and the surrounding property as having an "acceptable level of roadway service" without the dedication.

5

County then advised Hillcrest that a proposed shift in the Road by the Florida Department of Transportation ("FDOT") would require a dedication of an additional 90 feet, bringing the total to 140 feet.  The County was to compensate Hillcrest for these additional 90 feet.

In July 2007, Hillcrest submitted a different proposed site plan that had no improvement inside the 140-foot area.  In so doing, Hillcrest reserved its rights to object to the dedication of any land without compensation.  The County approved the preliminary site plan that August.

In June 2008, after having denied at least three of Hillcrest's construction plans for the site, the County approved a construction plan but conditioned approval upon reaching an agreement on the dedication.  Thereafter, the Magistrate Judge tells us, things get hazy.  What is clear is that Hillcrest and the County continued to disagree on matters related to the dedication.  And in January 2010, the County supposedly told Hillcrest that it lacked the ability to compensate Hillcrest the amount that it sought in compensation.

Hillcrest did not apply for a waiver or take any action in state court.

This suit ensued.  Later in 2010, Hillcrest filed a seventeen-count complaint in the District Court, as amended, alleging violations of both state and federal law. The federal causes of action included claims under the Takings Clause of the Fifth

6

Amendment, as incorporated by the Fourteenth Amendment, and facial and as-applied substantive-due-process claims under the Fourteenth Amendment.[6]

The crux of Hillcrest's substantive-due-process claim is that the County required the dedication "without . . . having first made an individualized determination that the exaction was reasonably related both in nature and extent to the traffic impacts of the proposed development," "without . . . having clearly demonstrated a reasonable connection or rational nexus between the need to 4-lane [the Road] and the traffic generated by the development and between the exaction and the benefits accruing to the development," and

> without . . . having first demonstrated that the need to widen [the Road] to 4-lanes is substantial and demonstrably clear and present, such that it definitely appears that Hillcrest's proposed development either forthwith or in the demonstrably immediate future will so overburden [the Road] as to require its accelerated improvement, or that the 4-laning of [the Road] is contemplated by the County or FDOT for immediate improvement.

In July 2011, the parties filed cross motions for partial summary judgment on numerous claims. These included motions by Hillcrest on the facial substantive-due-process claim and the County on the as-applied claim. The

---

[6] Teaser: the only claim that remains, the only claim at issue here, is an as-applied claim that the Ordinance violates substantive due process, as guaranteed by the Fourteenth Amendment.

The remaining counts have otherwise been resolved. The District Court dismissed some and declined to exercise supplemental jurisdiction over others. The remainder were dismissed with prejudice pursuant to a partial settlement agreement entered into by Hillcrest.

7

Magistrate Judge, in March 2012 and upon referral from the District Court, issued a report recommending that the Court grant both motions.

Just over one year later, in April 2013, the District Court granted summary judgment for Hillcrest on the facial claim but denied summary judgment on the as-applied claim (thus declining to follow the Magistrate Judge's recommendation). Pursuant to that decision, the Court permanently enjoined the County from enforcing the portions of the Ordinance that are in dispute here.

The County appealed. A panel of this Court held that Hillcrest's facial substantive-due-process claim, which was the basis for the District Court's judgment, was barred by the statute of limitations. *Hillcrest Prop., LLC v. Pasco County*, 754 F.3d 1279, 1283 (11th Cir. 2014). We accordingly vacated the District Court's order but expressed "no view as to the merits of Hillcrest's pending as-applied substantive due process claim." *Id.*

The litigation continued. In April 2016, the parties filed cross-motions for summary judgment on Hillcrest's as-applied substantive-due-process claim. Then, about a year and a half later, the District Court—riding on the back of the Magistrate Judge's March 2012 Report and Recommendation—granted Hillcrest's motion. *Hillcrest Prop., LLP v. Pasco County*, No. 8:10-CV-819-T-23TBM, 2017 WL 4342347, at *1 (M.D. Fla. Sept. 29, 2017).

The District Court summarily concluded that "application of a facially unconstitutional ordinance necessarily establishes a meritorious as-applied due-process claim." *Id.* at \*2. The Court entered an award of $1 in nominal damages in favor of Hillcrest—the only relief that Hillcrest had sought on this claim. *Id.*

Importantly, the District Court also allowed Hillcrest to move for attorneys' fees. *Id.* Indeed, as counsel acknowledged at oral argument, this case is currently about *nothing but* attorneys' fees. Let us explain. In January 2014, before this Court issued its decision in the first appeal, the parties to this case, in addition to the FDOT, entered into a partial settlement agreement. In exchange for a 100-foot strip of Hillcrest's property, the County and the FDOT would together compensate Hillcrest $4.7 million. Hillcrest, pursuant to the agreement, forfeited nearly all of its claims against the County, including its takings claim, but expressly reserved its as-applied substantive-due-process claim. As this litigation has stretched nearly nine years, we can only imagine that the fees Hillcrest seeks to collect are significant.

This second appeal ensued.

Because the Court still faces a case or controversy within the meaning of Article III, even if the controversy is only over attorneys' fees, the parties have properly invoked our jurisdiction. As such, we must decide the one claim that lingers and put this case to rest.

9

## II.

We review *de novo* a district court's grant of a motion for summary judgement, "viewing all of the facts in the record in the light most favorable to the non-movant." *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1153 (11th Cir. 2017) (quoting *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1249 (11th Cir. 2015)).  We affirm upon a showing that there is "'no genuine dispute as to any material fact' such that 'the movant is entitled to judgment as a matter of law.'"  *Id.* (quoting Fed. R. Civ. P. 56(a)).

## III.

The Due Process Clause of the Fourteenth Amendment provides, "No state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.

The Clause "extends beyond the command of fair procedures" and comprises a "substantive component as well."  *County of Sacramento v. Lewis*, 523 U.S. 833, 856, 118 S. Ct. 1708, 1721 (1998) (Kennedy, J., concurring).  As we describe below, substantive due process has two strands—one that protects against deprivation of fundamental rights and one that protects against arbitrary legislation. Neither strand offers Hillcrest relief here.

## A.

10

The Due Process Clause protects "fundamental rights found to be deeply rooted in our legal tradition," *Washington v. Glucksberg*, 521 U.S. 702, 722, 117 S. Ct. 2258, 2268 (1997), "that is, rights that are 'implicit in the concept of ordered liberty,'" *McKinney*, 20 F.3d at 1556 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 152 (1937)).  Absent a "compelling state interest" and an infringement "narrowly tailored" to serve that interest, the government may not violate those rights "*at all*, no matter what process is provided."  *Glucksberg*, 521 U.S. at 721, 117 S. Ct. at 2268 (quoting *Reno v. Flores*, 507 U.S. 292, 302, 113 S. Ct. 1439, 1447 (1993)).  These rights include "most—but not all—of the rights enumerated in the Bill of Rights" and "certain unenumerated rights (for instance, the penumbral right of privacy[)]."  *McKinney*, 20 F.3d at 1556.

Hillcrest does not allege denial of any fundamental right.  As we made clear in *McKinney*, fundamental rights in the constitutional sense do not include "state-created rights."[7]  *Id.* at 1560.  *McKinney* applies to Hillcrest's land-use claim that is the subject of this suit.  We explained in *DeKalb Stone, Inc. v. County of DeKalb*, 106 F.3d 956 (11th Cir. 1997) (per curiam), that "land use rights, as

---

[7] The *McKinney* plaintiff had been a "full-time permanent employee" of the state who was subsequently terminated. *Id.* at 1554.  He alleged that his termination was "pretextual," that he was terminated "without reason," and thus that his termination "violated his 'constitutional employment rights' and consequently denied him substantive due process of law." *Id.* at 1555.  We held that "[b]ecause employment rights are state-created rights and are not 'fundamental' rights created by the Constitution, they do not enjoy substantive due process protection." *Id.* at 1560.

11

property rights generally, are state-created rights." *Id.* at 959; *see also Greenbriar Vill., L.L.C. v. City of Mountain Brook*, 345 F.3d 1258, 1263 (11th Cir. 2003) (per curiam) (noting that "state-created rights . . . include land-use rights"). Under circuit precedent, then, this seems to be an open-and-shut case.

Hillcrest seeks to evade *McKinney* and its progeny, however, by distinguishing between "old property," which substantive due process supposedly protects, and "new property," which it does not.[8] The problem, of course, aside from the fact that *DeKalb Stone* and *Greenbriar Village* foreclose the argument altogether, is that neither the Supreme Court nor this Court draws a distinction between old property and new property.

In *Board of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701 (1972), the Supreme Court observed, "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."

---

[8] For readers unfamiliar with the concept of "new property," see generally Charles A. Reich, *The New Property*, 73 Yale L.J. 733 (1964). The core idea is that in a society "built around entitlement," *Goldberg v. Kelly*, 397 U.S. 254, 262 n.8, 90 S. Ct. 1011, 1017 n.8 (quoting Charles A. Reich, *Individual Rights and Social Welfare: The Emerging Legal Issues*, 74 Yale L.J. 1245, 1255 (1965) [hereinafter *Social Welfare*]), it is more appropriate "to regard welfare entitlements as more like 'property' than a 'gratuity,'" *id.* A classic example of new property is government employment, which was the right at issue in *Roth* and *McKinney*. Other examples are "subsidies to farmers and businessmen, routes for airlines and channels for television stations; long term contracts for defense, space, and education; social security pensions for individuals." *Goldberg*, 397 U.S. at 262 n.8, 90 S. Ct. at 1017 n.8 (quoting *Reich*, *Social Welfare*, *supra*, at 1255).

*Id.* at 577, 92 S. Ct. at 2709; *see also Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S. Ct. 1386, 1389 (1992) ("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law.").  Not only do *Roth* and its progeny say nothing to limit the *Roth* principle to new property, but the Court has extended the principle to old property on many occasions.[9]

Hillcrest also brings to our attention two decisions of the Supreme Court that it believes supports its argument that land-use rights are fundamental rights: *Koontz v. St. Johns River Water Management District*, 570 U.S. 595, 133 S. Ct. 2586 (2013), and *Lynch v. Household Finance Corp.*, 405 U.S. 538, 92 S. Ct. 1113 (1972).  Neither is apposite.

We start with *Koontz*, the case of more recent vintage.  The unconstitutional-conditions doctrine, which was *Koontz*'s focus, "vindicates the Constitution's *enumerated* rights by preventing the government from coercing people into giving them up."  570 U.S. at 604, 133 S. Ct. at 2594 (emphasis added).  There, the government would approve the plaintiff's construction permit "only if" he agreed

---

[9] For examples, see *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164, 118 S. Ct. 1925, 1930 (1998) (principal in lawyer trust account); *Delaware v. New York*, 507 U.S. 490, 503, 113 S. Ct. 1550, 1558 (1993) (escheat claims); *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1029, 112 S. Ct. 2886, 2900 (1992) (lake bed); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003–04, 104 S. Ct. 2862, 2872 (1984) (trade secrets); *Parratt v. Taylor*, 451 U.S. 527, 529 n.1, 101 S. Ct. 1908, 1910 n.1 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662 (1986) (hobby materials); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160, 101 S. Ct. 446, 450 (1980) (principal in court registry); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9, 98 S. Ct. 1554, 1560 (1978) (creditor rights).

to various concessions. *Id.* at 601, 133 S. Ct. at 2593. He declined. *Id.* at 602, 133 S. Ct. at 2593. There was, of course, no takings claim because "[w]here the permit is denied and the condition is never imposed, nothing has been taken." *Id.* at 608, 133 S. Ct. at 2597. But the problem is obvious: "[b]y conditioning a building permit on the owner's deeding over a public right-of-way, for example, the government can pressure an owner into voluntarily giving up property for which the Fifth Amendment would otherwise require just compensation." *Id.* at 605, 133 S. Ct. at 2594. The "unconstitutional conditions doctrine prohibits" "[e]xtortionate demands of this sort" because they "frustrate the Fifth Amendment right to just compensation." *Id.* at 605, 133 S. Ct. at 2595.

*Koontz* makes clear that an unconstitutional-conditions claim is its own constitutional cause of action that is "predicated" on some other enumerated constitutional right—in Koontz's case "predicated on the Takings Clause." *Id.* at 610, 133 S. Ct. at 2597.

*Koontz* thus does no work for Hillcrest here. Hillcrest did not assert an enumerated right allegedly infringed by an unconstitutional condition; it sued under substantive due process, which is unenumerated. Indeed, because the right is unenumerated, the "guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Glucksberg*, 521 U.S. at 720, 117 S. Ct. at 2267 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S. Ct. 1061,

14

1068 (1992)).  For precisely that reason, the Court has instructed us, pursuant to "judicial self-restraint," to "exercise the utmost care whenever we are asked to break new ground in this field."  *Collins*, 503 U.S. at 125, 112 S. Ct. at 1068.  In short, *Koontz* does not apply to substantive due process, as it does to the Takings Clause or to other enumerated constitutional rights.

We now turn to Hillcrest's other precedent.

*Lynch*, for its part, states only that the "[a]cquisition, enjoyment, and alienation of property" constitute "basic civil rights."  405 U.S. at 544, 92 S. Ct. at 1118.  As we explained in *DeKalb Stone*, however, though "property rights have been important common law rights throughout history," "common law rights are not equivalent to fundamental rights, which are created only by the Constitution itself."  106 F.3d at 959 n.6.  It is telling, moreover, that the "basic civil rights" referenced in *Lynch* stem not from the Constitution but from the Civil Rights Act of 1866.  405 U.S. at 543–44, 92 S. Ct. at 1117–18.  So *Lynch*, too, fails to bridge the gap between land-use rights and substantive due process.

## B.

There is a second strand to substantive due process, one on which Hillcrest hangs its case.

When "state-created rights are infringed by a 'legislative act,' the substantive component of the Due Process Clause generally protects that person

15

from arbitrary and irrational government action." *Kentner v. City of Sanibel*, 750 F.3d 1274, 1279−80 (11th Cir. 2014) (quoting *Lewis v. Brown*, 409 F.3d 1271, 1273 (11th Cir. 2005) (per curiam)); *see also Palko*, 302 U.S. at 327, 58 S. Ct. at 153 ("[T]he legislative judgment, if oppressive and arbitrary, may be overridden by the courts.").

But not all state action is legislative. In *McKinney*, we emphasized the "crucial . . . distinction between 'legislative' acts and 'non-legislative' or 'executive' acts." 20 F.3d at 1557 n.9 (citation omitted). Whereas legislative acts "generally apply to a larger segment of—if not all of—society," executive acts "characteristically apply to a limited number of persons (and often to only one person)." *Id.* Examples of the former are "laws and broad-ranging executive regulations"; examples of the latter are "ministerial or administrative activities of members of the executive branch."[10] *Id.*

Hillcrest's assertion that this Court recognizes a substantive-due-process right that "protects essential rights in real property from arbitrary, capricious and unreasonable land use regulation" fails to appreciate the *McKinney* distinction. Hillcrest, seeking to overcome the distinction, cites *Village of Arlington Heights v.*

---

[10] Hillcrest argues that this language is dicta because "*McKinney* was decided on the basis that Ms. McKinney's employment rights were state-created and therefore not protected by substantive due process." Hillcrest is wrong: *McKinney* required us to draw this distinction because substantive due process does prohibit arbitrary *legislative* action, even if that action is deprivation of a state-created right.

16

*Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S. Ct. 555 (1977), which alluded to the "right to be free of arbitrary or irrational zoning actions," *id.* at 263, 97 S. Ct. at 562.  But this snippet does not advance Hillcrest's position.  First, the cited language is pure dicta; *Arlington Heights*, as every law student learns, concerns equal protection, not substantive due process.  Indeed, the Court— in the very next sentence—explained that the "heart of this litigation," *id.* at 263, 97 S. Ct. at 562, was the plaintiff's equal-protection claim, which served as the basis for the Court's analysis.  *See id.*  Second, the Court's citations for the quoted language are to police-power cases, each of which involved challenges to *legislation*, not to executive action.  *See Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 384, 47 S. Ct. 114, 117 (1926) (ordinance); *Nectow v. City of Cambridge*, 277 U.S. 183, 185, 48 S. Ct. 447, 447 (1928) (same); *Village of Belle Terre v. Boraas*, 416 U.S. 1, 3, 94 S. Ct. 1536, 1538 (1974) (same).[11]  *Arlington*

---

[11] *Washington ex rel. Seattle Title & Trust Co. v. Roberge*, 278 U.S. 116, 49 S. Ct. 50 (1928), another decision of the Supreme Court that Hillcrest flags, is yet another police-power case.  The Court applied the rule that "[l]egislatures may not, under the guise of the police power impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities."  278 U.S. at 121, 49 S. Ct. at 52.  Put differently, legislation, to be legitimate, must "bear a substantial relation to the public health, safety, morals, or general welfare."  *Id.* at 121, 49 S. Ct. at 51–52 (quoting *Nectow*, 277 U.S. at 188, 48 S. Ct. at 448).

Hillcrest cites a single line within the opinion: "The right of the trustee to devote its land to any legitimate use is property within the protection of the Constitution."  *Id.* at 121, 49 S. Ct. at 52.  But that language has no significance here when the entire paragraph is devoted to discussing whether the enactment at issue accords with the police power.  *See id.* (evaluating the constitutionality of the statute in light of "public health, safety, morals or general welfare" and the "public interest").

17

*Heights* thus tells us nothing about Hillcrest's claim here—a substantive-due-process violation for allegedly arbitrary executive action.[12]

In short, the *McKinney* distinction between legislative and executive action is alive and well and as we explain below, fatal to Hillcrest's substantive-due-process claim in this case. First, the nature of the pleadings reveals that Hillcrest challenges the application of the Ordinance, not anything inherent in its design. As such, the County's actions are characterized as executive, not legislative. Second, and relatedly, Hillcrest pleads an as-applied violation of substantive due process. But as-applied violations are always executive because the executive is responsible for applying, or enforcing, the law.[13]

1.

---

[12] Hillcrest also proffers six decisions of this Circuit that purportedly identify a fundamental right to use property in a particular manner. Of the six cases, three pre-date *McKinney*. *See Reserve, Ltd. v. Town of Longboat Key*, 17 F.3d 1374 (11th Cir. 1994); *Corn v. City of Lauderdale Lakes*, 997 F.2d 1369 (11th Cir. 1993); *Eide v. Sarasota County*, 908 F.2d 716 (11th Cir. 1990). We thus do not discuss these cases at all. The remaining three cases involved substantive-due-process challenges to *legislative* acts. *See New Port Largo, Inc. v. Monroe County*, 95 F.3d 1084, 1091 (11th Cir. 1996) (reasoning that the zoning decision at issue was a "legislative judgment[]"); *Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208, 1214 (11th Cir. 1995) (evaluating under a two-part test whether the "legislation" at issue could have served a legitimate purpose and whether the "legislation" could have furthered that purpose). Though the *Restigouche* plaintiff brought an as-applied substantive-due-process challenge, 59 F.3d at 1211, we made clear that we only "assumed *arguendo* some sort of vested right," *id.* at 1215 n.7. So too in *Villas of Lake Jackson, Ltd. v. Leon County*, 121 F.3d 610 (11th Cir. 1997), where we assumed that the challenge was to a "legislative rather than an executive act." *Id.* at 614.

[13] To be clear, nothing about our holding limits a person's ability to bring an as-applied substantive-due-process challenge to executive action that infringes on *fundamental* rights. We today speak only about state-created rights.

18

The deprivation alleged in this case is quintessentially executive action, as our prior land-use cases reveal.

In *Lewis v. Brown*, 409 F.3d 1271 (11th Cir. 2005) (per curiam), for example, a family had purchased property that was zoned for agricultural use. *Id.* at 1272. After purchasing it, the family applied to rezone the property for residential use, use that would have been "consistent with the County's land-use plan." *Id.* The government denied the family's application. *Id.* The family subsequently brought a substantive-due-process claim and alleged, as does Hillcrest here, that the decision was "arbitrary and capricious." *Id.* We affirmed the District Court's grant of the motion to dismiss for failure to state a claim. *Id.* at 1274. We reasoned that the decision was a "textbook 'executive act'" given that the action affected "only a limited class of persons, namely, the [plaintiffs]." *Id.* at 1273.

So too here. The whole of Hillcrest's challenge, as alleged in their Amended Complaint, is that the County "has applied [the Ordinance] . . . *so as to require Hillcrest* to set aside or dedicate a substantial portion of the [p]roperty for the benefit of the public for future use as a right of way." Said in *McKinney*-speak, the harm that allegedly results from the County's action is harm only to Hillcrest.

Hillcrest argues that the County's action here was "legislative or quasi-legislative in nature." It cites *Kelo v. City of New London*, 545 U.S. 469, 125 S. Ct.

2655 (2005), which reasoned that in the context of eminent domain, "[o]nce the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch." *Id.* at 489, 125 S. Ct. at 2668 (quoting *Berman v. Parker*, 348 U.S. 26, 35–36, 75 S. Ct. 98, 104 (1954)). But *Kelo* only strengthens the decision that we today lay down. There, the city had passed a "development plan" that was intended to "revitalize an economically distressed city."[14] *Id.* at 472, 125 S. Ct. at 2658. The Court explained that the "takings . . . would be *executed pursuant* to a 'carefully considered' development plan." *Id.* at 478, 125 S. Ct. at 2661 (citation omitted) (emphasis added). What Hillcrest fails to grasp is that the development plan in *Kelo*, like the Ordinance here, was legislative, but the application of that plan, like the application of the Ordinance here to Hillcrest, was executive.[15]

2.

---

[14] The plan, which obtained "state-level approval," was created by a "private nonprofit entity established some years earlier to assist the [c]ity in planning economic development." *Id.* at 473, 125 S. Ct. at 2659. The petitioner argued that the condemnation of her home violated the "'public use' restriction in the Fifth Amendment." *Id.* at 475, 125 S. Ct. at 2660.

[15] The same problem plagues the other cases that Hillcrest brings to our attention. The Supreme Court in *Rindge Co. v. Los Angeles County*, 262 U.S. 700, 43 S. Ct. 689 (1923), noted that the "necessity and expediency of the taking . . . are legislative questions, no matter who may be charged with their decision." *Id.* at 709, 43 S. Ct. at 693 (quoting *Bragg v. Weaver*, 251 U.S. 57, 58, 40 S. Ct. 62, 63 (1919)). These cases involved the legislative authorization to take, not the taking itself. *Id.* at 702, 43 S. Ct. at 691; *Bragg*, 251 U.S. at 58, 40 S. Ct. at 63. Hillcrest here does not challenge the Ordinance itself but a specific application of the Ordinance—namely, to Hillcrest.

20

There is a more fundamental reason why, under our precedent, Hillcrest lacks a substantive-due-process claim: it brings an as-applied challenge.[16]  Because the role of the executive is to *apply*, or to enforce, statutes, any as-applied challenge necessarily implicates executive, rather than legislative, action.  The Constitution, for example, requires the President to "take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 3.  *Cf. Springer v. Philippine Islands*, 277 U.S. 189, 202, 48 S. Ct. 480, 482 (1928) ("Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement.  The latter are executive functions.").

We drew this distinction between facial and as-applied challenges in *Kentner v. City of Sanibel*, 750 F.3d 1274 (11th Cir. 2014).  There, we reasoned that the plaintiffs' substantive-due-process challenge was to a "legislative act" because the plaintiffs challenged the ordinance "on its face rather than contesting a specific zoning or permit decision made under the auspices of the [o]rdinance." 750 F.3d at 1280.  As such, we deemed it not barred by *McKinney*.  We implied in *Kentner* what we now make clear today: an as-applied challenge to a land-use

---

[16] At oral argument, counsel for Hillcrest reiterated the nature of its challenge: "The bottom line here, Judges, is, 'Can you codify extortionate leveraging of the police power in an ordinance and then *attempt to enforce it*?'  And our position is that the *attempt to enforce it* is a violation of substantive due process." Oral Argument at 23:30, *Hillcrest Prop., LLP v. Pasco County*, ___ F.3d ___ (2019) (No. 17-14789), https://goo.gl/sq4Bkv (emphasis added).

21

statute never gives rise to a substantive-due-process claim when the sole basis for the challenge is allegedly arbitrary behavior that does not infringe on a fundamental right.

3.

We cannot be clearer on this point: regardless of how arbitrarily or irrationally the County has acted with respect to Hillcrest, Hillcrest has no substantive-due-process claim. *Cf. Greenbriar Vill., L.L.C.*, 345 F.3d at 1263 ("[N]on-legislative deprivations of state-created rights, which would include land-use rights, cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrary and irrationally. Constitutional due process is satisfied for these deprivations when proper procedures are employed." (citations omitted)).

IV.

For these reasons, the application of the Ordinance to Hillcrest does not give rise to a substantive-due-process claim. Because Hillcrest lacks a viable cause of action, judgment as a matter of law is appropriate. The District Court's grant of summary judgment is therefore **REVERSED**.

**SO ORDERED.**

NEWSOM, concurring in the judgment:

About 20 years ago now, an insightful (and hilarious) lawyer friend of mine said to me—and because this is a family show, I'll clean it up a bit—"Not everything that s[tink]s violates the Constitution."  If ever a case proved the truth of that little nugget, this is it.

## I

### A

First things first.  What happened to Hillcrest here was pretty doggone s[tink]y.  In short:  Hillcrest is the fee-simple owner of 16.5 acres of commercially zoned land that fronts State Road 52 in Pasco County, Florida.  Desiring to put the land to good (and presumably profitable) use, Hillcrest sought a permit to develop its property to include a retail shopping center and additional commercial space.  Despite the fact that the County's own "Comprehensive Plan" described State Road 52 and the adjacent areas as having an "acceptable level of roadway surface," Hillcrest was told that in order to obtain the permit, it would have to give the County a 50-foot strip of land—70,000 square feet total—to accommodate the road's future widening.  Hillcrest accordingly revised its site plan to account for the 50-foot corridor.  Just a few months later, though, having been notified that the Florida DOT might want to shift the road's path, the County demanded that Hillcrest hand over an additional 90-foot band, bringing the required dedication's

23

grand total to 196,000 square feet—4.5 acres, more than a quarter of Hillcrest's total parcel. Over the course of the next few years, the parties continued to haggle, the County continued to deny Hillcrest's construction permits, and Hillcrest—presumably feeling like it was trapped in some Ayn-Rand-ian nightmare—eventually sued.

Sounds like a job for the Takings Clause, right? That provision states that "private property" may not be "taken for public use . . . without just compensation," U.S. Const. amend. V, and has been interpreted to prohibit the government from conditioning a development permit on a land exaction absent solid proof that the exaction both (1) bears an "essential nexus" and (2) "is related both in nature and extent" to the proposed development's impact. *See Nollan v. California Coastal Comm'n*, 483 U.S. 825, 834–37 (1987); *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994). Unsurprisingly, in its original complaint, Hillcrest alleged (among other causes of action) takings claims under both the United States and Florida Constitutions, asserting that the "required set aside and dedication amount[ed] to an uncompensated taking of private property for public use requiring the County to pay Hillcrest just compensation." For support, Hillcrest cited *Nollan* and *Dolan* as indicative of the Supreme Court's "concern with," among other things, the "extortionate leveraging of the police power by

24

local government to obtain concessions from landowners that the government would otherwise have to pay for itself."

Hillcrest's takings-based claims, though, never saw the light of day. Hillcrest initially moved to abate its federal takings claim, acknowledging that it first had to "pursue adequate state procedures for seeking just compensation" under *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985). Then, in conjunction with that exhaustion-of-remedies process, Hillcrest filed an amended federal complaint from which it dropped its Fifth Amendment takings claim. Several years later, the parties entered into a partial settlement agreement pursuant to which Pasco County agreed to pay Hillcrest $4.7 million to resolve the takings-based claims.

Meanwhile, the federal-court litigation—minus the Takings Clause allegation—chugged ahead, with Hillcrest continuing to press what, to my mind, was the exact same claim parading under a different banner: "substantive due process." And the district court let it. By permitting Hillcrest to invoke substantive due process to pursue what was in substance a Takings Clause claim— a claim that, for its own reasons, Hillcrest had dropped from the lawsuit and would eventually settle for good money—the district court clearly erred.

25

**B**

The district court was (understandably) disgusted by the County's treatment

of Hillcrest. Beginning with the summary judgment hearing, the district court

expressed profound "discomfort" with Pasco County's conduct. It just "doesn't sit

well," the court said. "You look at this and it's disturbing and you think, this is

just not right. Something—somewhere this is flawed, whether [or not] you know,

the theories happen to fit it." In the end, the court concluded: "As I sit here, I don't

quite know whether [the case] fits in any of these [constitutional] slots that [the

lawyers] have laid out, but I'm not sure it shouldn't . . . . And I'm not sure that if

it doesn't fit into one of them that I'm not going to find the one it's closest to and

give the Circuit Court of Appeals an opportunity to say that it should land there."

Memorializing its disgust—and reasoning—in a written order, the district court

held:

> Another judge might find . . . this opinion inexact in this or that
> particular of constitutional law. Nonetheless, this Ordinance
> [pursuant to which the County demanded the exaction] is an
> unmistakable, abusive, and coercive misapplication of governmental
> power, perpetrated to cynically evade the Constitution. The
> Ordinance cannot stand, whether for the precise reasons stated here or
> for a related reason.

Translation: What Pasco County did here s[tink]s to high heaven; ergo, it must be

unconstitutional—if not under the Takings Clause, because Hillcrest's takings-

based claim had evaporated with its amended complaint, then on some (any) other

26

basis.  The basis that the district court chose—the constitutional "slot[]" into which it slid Hillcrest's case—was substantive due process.

That's not how constitutional law works.  Whatever other role substantive-due-process doctrine may play, it is not a stand-in for a failed, forfeited, or (even worse) settled Takings Clause claim.  The district court should have seen this case for what it is: a not-so-veiled attempt to revive its dropped (and eventually settled) Takings Clause claim and to infuse it with new substantive-due-process life.  The fact that Hillcrest sought to do so—and that the district court let it, relying on substantive-due-process doctrine as a failsafe for remedying actions that "do[n't] sit well" or that are "just not right," speaks volumes about the doctrine's slipperiness.

## C

### 1

Substantive due process, of course, has been criticized by a wide variety of people for a wide variety of reasons.  First, and most obviously, there's the pesky issue of constitutional text.  As John Hart Ely colorfully remarked, "there is simply no avoiding the fact that the word that follows 'due' is 'process.'"  John Hart Ely, *Democracy and Distrust: A Theory of Judicial Review* 18 (1980).  "[W]e apparently need periodic reminding," he said—providing the reminder—"that 'substantive due process' is a contradiction in terms—sort of like 'green pastel

redness.'" *Id.* Others—from one end of the jurisprudential spectrum to the other—have made the same basic observation. *See, e.g.*, *United States v. Carlton*, 512 U.S. 26, 39 (1994) (Scalia, J., concurring in the judgment) (calling substantive due process "an oxymoron"); Laurence H. Tribe, *American Constitutional Law* § 7-5, at 1317 (3d ed. 2000) (referring to "the textual gymnastics arguably necessary to find protection of *substantive* rights in a provision whose words seem most apparently concerned with *process*").

Second, there's the matter of history. The best indications are that those who framed the Fourteenth Amendment's Due Process Clause envisioned it as a guarantee (as its phrasing and moniker indicate) of fair process, not a font of substantive rights. During the floor debates on the Fourteenth Amendment, Congressman John Bingham—the principal draftsman of the Amendment's Section 1—responded to a question about the meaning of the Due Process Clause: "[T]he courts have settled that long ago, and the gentleman can go and read their decisions." Cong. Globe, 39th Cong., 2d Sess. 1089 (1866). The most prominent of those "decisions" was undoubtedly *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272 (1855), which the Supreme Court decided in 1856 and which, just a decade later, was the definitive statement on the meaning of the phrase "due process of law." The Court there construed the

28

materially identical terms of the Fifth Amendment's Due Process Clause solely in procedural terms. Specifically, the Court said:

> To what principles, then, are we to resort to ascertain whether this *process*, enacted by congress, is due process? To this the answer must be twofold. We must examine the constitution itself, to see whether this *process* be in conflict with any of its provisions. If not found to be so, we must look to those settled usages and modes of *proceeding* existing in the common and statute law of England, before the emigration of our ancestors . . . .

*Id.* at 276–77 (emphasis added); *see also, e.g.*, Akhil Reed Amar, *The Bill of Rights: Creation and Reconstruction* 173 (1998) (describing *Murray's Lessee* as a "procedural due process" case).

Third, pedigree. At least in the Supreme Court, substantive-due-process doctrine traces its roots to the fateful—and repugnant—decision in *Dred Scott v. Sandford*, 60 U.S. (19 How.) 393 (1857). Invalidating the Missouri Compromise as violative of the Fifth Amendment's Due Process Clause, the Court observed that "an Act of Congress which deprives a citizen of the United States of his liberty or property, merely because he came himself or brought his property"—which was to say, another human being—"into a particular Territory of the United States, and who had committed no offen[s]e against the laws, could hardly be dignified with the name of due process of law." *Id.* at 450. Tellingly, the Court voiced no particular objection to the procedures by which Congress had enacted the Missouri Compromise; rather, it simply concluded that, somehow or another, the substance

29

of the act must have infringed a white man's "right" to own a black man.  Yuck.

Fast forward about half a century and you arrive at a second pillar of substantive-

due-process jurisprudence, *Lochner v. New York*, 198 U.S. 45 (1905).  There, the

Court invalidated a state statute establishing maximum work hours for bakers as

violating the "general right to make a contract in relation to . . .  business."  *Id*. at

53.  Again, the procedures employed in enacting the law were just fine; even so,

the Court held that the law was substantively unreasonable and, therefore, that it

simply had to be unconstitutional.  Double yuck.

Finally, in addition to the textual, historical, and ancestral difficulties that

plague modern substantive-due-process jurisprudence, the Supreme Court has also

emphasized a very real practical problem: The "guideposts for responsible

decisionmaking in this unchartered area are scarce and open-ended."  *Collins v.

City of Harker Heights*, 503 U.S. 115, 125 (1992).  Put simply, there is always a

risk that a court asked to recognize a substantive-due-process violation—but

without traditional interpretive guardrails—will simply read into the Constitution

its own view of good government.  Accordingly, the Supreme Court has

emphasized, "[t]he doctrine of judicial self-restraint requires us to exercise the

utmost care whenever we are asked to break new ground in this field."  *Id*.

**2**

One important way in which the Supreme Court has set out to "restrain[]" substantive-due-process decisionmaking—significant for present purposes—is by holding, repeatedly, that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–74 (1994) (plurality) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Put slightly differently, "if a constitutional claim is covered by a specific provision"—the Fourth Amendment, the Eighth Amendment, etc.—"the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). More specifically, and more pertinently here, substantive due process "cannot" "do the work of the Takings Clause." *Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*, 560 U.S. 702, 721 (2010) (plurality) (citing *Albright* and *Graham*).

Bottom line: Whatever its proper office—and, as noted, there's plenty of debate about that—substantive due process does *not* exist to duplicate (or insure, as it were) claims appropriately pursued under other constitutional guarantees. If a claim properly fits within a specific constitutional provision, then it must rise or

31

fall on the doctrine that applies to that provision. If (for whatever reason) the claim can't proceed in its natural textual and doctrinal "home," then, well, it can't proceed. The claimant can't just repackage it in substantive-due-process garb and attempt to relitigate it.

In that respect at least, this case represents substantive due process at its abject worst. At its core, this has always—*always*—been a Fifth Amendment Takings Clause case. Hillcrest contests Pasco County's insistence that, as the price for developing its roadside parcel, it surrender 196,000 square feet—some 4½ acres—of its land. Put simply, Hillcrest's is a "land-use exaction" claim—which, as the Supreme Court has clarified, is one of the quintessential means by which "a plaintiff [can] challenge a government regulation as an uncompensated taking of private property" under the Fifth Amendment. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 548 (2005).

But don't just take my word for it. Listen to how the magistrate judge and the district court described Hillcrest's arguments. To begin, the magistrate judge—even while resolving the case on substantive-due-process grounds—summarized the nub of Hillcrest's position as based in Takings Clause principles:

> Hillcrest maintained that the dedication requirement resulted in *an unconstitutional taking of its property* and that it should be compensated for the 140-foot clear space it is required to dedicate to the County in exchange for its development permit/order. When the parties failed to resolve the dispute over compensation, this suit was filed.

32

R. & R., Doc. 168 at 14 (emphasis added). Explaining what he viewed as the constitutional infirmity, the magistrate said that Ordinance No. 11-15 "compelled [landowners] to *surrender private property without compensation* as a condition of development approval or permitting." *Id*. at 26 (emphasis added). The Ordinance's "dedication provision," he continued, "is no mere regulation of land use but rather a calculated measure by the County to avoid the burdens and costs of eminent domain and *take private property without just compensation*." *Id*. at 26–27 (emphasis added). The Ordinance, the magistrate held, "commands that certain landowners be forced 'to bear the public burdens which, in all fairness and justice, should be borne by the public as a whole,' the very thing *the Takings Clause of the United States Constitution* and the equivalent provision of the Florida Constitution are intended to prevent." *Id*. at 27–28 (emphasis added).

Tellingly, throughout his report—and to support his conclusion that the Ordinance violates substantive due process—the magistrate judge relied on the Supreme Court's decisions in *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374 (1994), both of which, as already explained, addressed the constitutionality of land-use exactions under *the Takings Clause*. *See* Doc. 168 at 15–16, 17, 24–25, 27, 29. The magistrate judge said (vaguely) that "[w]hile *Nollan* and *Dolan* do not set forth the applicable standard"—presumably because they are Takings Clause cases—they "help inform

33

the due process analysis." *Id*. at 25.  Notably, however, when it came to explaining precisely why the Ordinance violated substantive-due-process principles, the magistrate judge reverted back to a takings-based analysis:  "[T]he scheme itself violates due process because it is *inconsistent with, and permits the County to avoid its obligations under, the Takings Clause of the Fifth and Fourteenth Amendments of the United States Constitution* and Article X, Section 6 of the Florida Constitution."  *Id*. at 29 (emphasis added).

The district court's decision delivered more of the same.  On the very first page of its order, that court criticized Ordinance No. 11-15 as part of "a most uncommon regulatory regime" designed "to avoid the payment of '*just compensation*' after acquiring . . . necessary land by eminent domain."  Order adopting R. & R., Doc. 196 at 1 (emphasis added).  In particular, the court said: "[T]o avoid the nettlesome payment of '*just compensation*,' the Ordinance empowers Pasco County to purposefully leverage the permitting power to compel a landowner to dedicate land encroached by a transportation corridor.  In Pasco County, if there is no free dedication, there is no permit."  *Id*. at 2 (emphasis added).  Perhaps most revealingly, the district court observed, even while noting that by the time that it issued its order Hillcrest was "assert[ing] no federal takings claim," that "Hillcrest's core argument invokes two United States Supreme Court cases"—yes, *Nollan* and *Dolan*—"that consider whether a government's requiring

34

land in exchange for development approval violates *the Fifth Amendment's Takings Clause, applied to the states through the Fourteenth Amendment*." *Id.* at 14–15 (emphasis added). Indeed, the district court went so far as to conclude that "[u]nder the Takings Clause the infirmity of the Ordinance is clear," *id.* at 35, and, further, that "an exaction athwart *Nollan* and *Dolan* results in an uncompensated taking and *not* a deprivation of due process," *id.* at 37 (emphasis added). What made this case "different," the court said—what took it out of the Takings Clause bucket and put it into the substantive-due-process bucket—was that here, "by legislative fiat, Pasco County use[d] a development permit to compel a landowner either to convey valuable land for free or to submit to a regime castigated by *Dolan*," and thereby "wield[ed] the police power to compel a landowner's abandoning rights guaranteed by the Takings Clause." *Id.* I'll have to confess that I'm having a hard time seeing the doctrinal space—between where the Takings Clause leaves off and substantive-due-process doctrine picks up—that the district court found conclusive.

Tellingly, even in its appellate brief Hillcrest continues to focus on takings-based arguments, asserting time and again—buttressed by citations to *Nollan* and *Dolan*—that Ordinance No. 11-15 deprives it of "the right to be compensated for a taking." Br. for Appellees at 27; *see also id.* at 33, 37 (same); *id.* at 39 (contending that the County violated Hillcrest's fundamental right to be free of "extortionate,

35

arbitrary[,] and irrational regulation and to be compensated for taking of property"). To be sure, Hillcrest now contends that *Nollan* and *Dolan* were not Takings Clause cases *per se*, but rather "unconstitutional conditions" cases. And it's true that both decisions involved the unconstitutional-conditions doctrine. But as any faithful reading will attest, both fundamentally implicated landowners' rights under the Takings Clause.

Again, rather than telling, I'll show. In *Nollan*, for instance, the Supreme Court framed the question as whether, consistent with "the Takings Clause of the Fifth Amendment," a state agency "could condition its grant of permission to rebuild [a] house on [the homeowners'] transfer to the public of an easement across their beachfront property." 483 U.S. at 827. The Court observed that if the state had required the homeowners to grant the easement outright there is "no doubt there would have been a taking." *Id*. at 831. "[C]onditioning their permit to rebuild their house on their agreeing" to the easement did not "alter[] the outcome," the Court held, because there was no "essential nexus" between the projected impact of constructing a larger house—*e.g.*, obstructed views from the road—and the exaction demanded of the homeowners—*i.e.*, an easement that would allow the public to cross their property along the water's edge. *Id*. at 834–37. Takings Clause, through and through.

Similarly, in *Dolan*, the Court considered the question whether, under the Takings Clause, a city "could condition the approval of [a business owner's] building permit on the dedication of a portion of her property for flood control and traffic improvements"—and, in particular, the question of "the required degree of connection between the exactions imposed by the city and the projected impacts of the proposed development." 512 U.S. at 377. The Court opened its analysis by quoting the Takings Clause in full and reiterating (just as Hillcrest and district court have here, *see* Doc. 196 at 24; Br. for Appellees at 14) that "[o]ne of the principal purposes of the Takings Clause is 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Id*. at 384 (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)). The Court held that before a government agency can condition a building permit on a property owner's dedication of a portion of her parcel, it must, in order to comply with "the Fifth Amendment," make "some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Id*. at 391.

So let's be clear: *Nollan* and *Dolan*—the linchpins of the magistrate judge's R&R, the district court's decision, *and* Hillcrest's argument on appeal—are Takings Clause cases. As the Supreme Court subsequently summarized in *Lingle*, "[b]oth *Nollan* and *Dolan* involved Fifth Amendment takings challenges to

37

adjudicative land-use exactions—specifically, government demands that a landowner dedicate an easement allowing public access to her property as a condition of obtaining a development permit." 544 U.S. at 546. That description pretty much precisely captures this case: Just like the plaintiffs in *Nollan* and *Dolan*, Hillcrest is complaining that Pasco County has required it to relinquish a portion of its property *as a condition for obtaining a development permit*.

* * *

Back to the beginning, then: Why aren't we talking about the Takings Clause? And why *are* we talking about substantive due process? Because although Hillcrest initially brought a takings claim, it then dismissed that claim (pending the resolution of parallel litigation in state court) and then eventually settled it for $4.7 million. Having done so, Hillcrest now wants a second bite at the apple—in essence, a chance to recover again—under the auspices of substantive due process. No way.

The way I see it, Hillcrest's substantive-due-process claim fails as a matter of law because, whatever else it may currently be permitted to do, substantive-due-process doctrine cannot be permitted to stand in for a failed or forfeited Takings Clause claim. And it certainly can't be deployed to allow a litigant to double-dip and cash in on a takings claim and then relitigate what is for all intents and purposes the exact same claim under another label.

38

Accordingly, albeit by a different route, I too conclude that the district court's decision must be reversed.

## II

Having explained my own reasons for concluding that Hillcrest's substantive-due-process claim fails as a matter of law, let me briefly explain a reservation that I have about one of the key "moves" that underlies the majority's analysis.  To be clear, I think the majority has it exactly right under our existing precedent.  I'm just not convinced that our precedent has it exactly right.

The majority first holds, in Part III.A. of its opinion, that the property interest asserted by Hillcrest here—a "land-use claim"—is a mere "state-created right" that doesn't warrant heightened constitutional protection.  Maj. Op. at 11.  Under our decisions in *DeKalb Stone, Inc. v. County of DeKalb*, 106 F.3d 956 (11th Cir. 1997) (per curiam), and *Greenbriar Village, L.L.C. v. Mountain Brook*, 345 F.3d 1258 (11th Cir. 2003) (per curiam)—the latter of which is effectively on point—I'm convinced the majority is correct about that.[17]  Having so concluded,

---

[17] I hasten to add, however, that I reject any suggestion—typically attributed to the oft-repeated-but-rarely-explained dictum that "[p]roperty interests . . . are not created by the Constitution" but "[r]ather . . . are created and their dimensions . . . defined by existing rules or understandings that stem from an independent source such as state law," *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)—that *all* property rights, no matter how traditional, exist by the state's grace and at its pleasure.  To the contrary, I share Judge O'Scannlain's view that "there is . . . a 'core' notion of constitutionally protected property into which state regulation simply may not intrude without prompting" substantive constitutional scrutiny—under either the Takings Clause or (as matters currently stand) the Due Process Clause.  *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1200 (9th Cir. 1998).

the majority then proceeds, in Part III.B., to reiterate and enforce what we have called the "crucial . . . distinction"—first recognized in *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc)—"between 'legislative' acts and 'non-legislative' or 'executive' acts." Maj. Op. at 16 (quoting *McKinney*, 20 F.3d at 1557 n.9). It's this legislative-executive distinction that I'd like to address briefly.

In short, the distinction (as accurately summarized by the majority) is as follows: "When [a person's] 'state-created rights are infringed by "legislative act," the substantive component of the Due Process Clause generally protects that person from arbitrary and irrational government action.'" Maj. Op. at 15 (citations omitted). When, by contrast, a state-created right is violated by executive act, the Due Process Clause provides *no* substantive protection—even against arbitrary and irrational government conduct. Because the County's permit-denying conduct here was "quintessentially executive action," the majority concludes, Hillcrest has no claim "regardless of how arbitrarily or irrationally the County has acted." *Id*. at 19, 22.

I agree that Hillcrest is challenging non-legislative, executive conduct here—it's pressing an as-applied claim against the enforcement of Ordinance No. 11-15. Accordingly, I also agree that under our precedent Hillcrest enjoys no substantive-due-process protection. And of course I've already confessed my view that substantive due process is a dubious doctrine that should be cabined, not

40

expanded.  Having said that, though, I further confess that I don't fully understand the distinction that we've drawn between legislative and executive action.

We initially articulated the distinction—in a footnote—in *McKinney*. "Executive acts," we explained, "characteristically apply to a limited number of persons (and often to only one person)."  20 F.3d at 1557 n.9.  They "typically arise," we said, "from the ministerial or administrative activities of members of the executive branch."  *Id*.  "Legislative acts, on the other hand, generally apply to a larger segment of—if not all of—society; laws and broad-ranging executive regulations are the most common examples."  *Id*.  In the years since *McKinney*, we have repeated (and repeated and repeated—but without further explaining) this distinction between legislative and executive acts.  *See, e.g.*, *Kentner v. City of Sanibel*, 750 F.3d 1274, 1279–80 (11th Cir. 2014); *Lewis v. Brown*, 409 F.3d 1271, 1273 (11th Cir. 2005); *Greenbriar*, 345 F.3d at 1263; *DeKalb Stone*, 106 F.3d at 959–60.

I have no real quarrel with the way we defined and categorized legislative and executive actions in *McKinney*.  I agree that, in the main, legislative acts apply generally to (and across) a broad swath of people, whereas executive acts are aimed at only one or a few.  What I don't understand is why we should think that the Constitution provides *less* protection against executive than legislative infringements.  There's certainly no textual basis for the distinction; the Due

41

Process Clause says that no "state"—presumably meaning any branch thereof—shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  Nor, so far as I'm aware, have we ever tried to justify the legislative-executive distinction on historical grounds.  And worse, as a practical matter, the distinction that we've drawn—such that the Clause protects against arbitrary and irrational legislative acts, but not against abusive executive conduct—arguably gets matters precisely backwards.  As between the two, it seems to me, executive action—which, by its nature, is individual, targeted, and one-off, rather than broadly and generally applicable—holds the greater potential for abuse.  If a piece of arbitrary legislation threatens to gore many oxen at once, the ox owners have a fighting chance of exercising enough political muscle to stop it; the lonely individual whose ox is gored by abusive executive action has next to none.

And while it may be true that executive acts "typically" arise from "ministerial or administrative" undertakings, they can also entail exercises of substantial discretion.  This is a case in point.  Though perhaps not quite boundless, it's clear that the County's Development Review Committee has wide latitude in the way that it enforces and effectuates Ordinance No. 11-15.  As the magistrate judge noted in his R&R, "[t]he DRC has the [sole] authority to approve preliminary site plans, place conditions on such approval, and to exact right-of-

ways" under the Ordinance. So too, the DRC alone decides whether a property

owner has sufficiently proven that the dedication isn't "roughly proportional" to

the development's likely transportation impacts, and accordingly, whether to

compensate the owner or grant a waiver. As this sad story demonstrates, the

sweeping discretion given to the DRC creates the very real threat of arbitrary and

abusive decisionmaking at every step of the permitting process.[18]

---

[18] Prudential considerations aside, *McKinney*'s holding—that at least insofar as land-use claims are concerned there can be no substantive-due-process claim against even the most abusive executive action—is at least arguably inconsistent with intervening Supreme Court precedent. In the *City of Cuyahoga Falls v. Buckeye Community Hope Foundation*, the Court addressed a substantive-due-process challenge to a city engineer's refusal to issue development permits to a property owner. 538 U.S. 188, 198 (2003). In rejecting the claim, the Court declined to reach the question whether the property owner had a protectable interest in the permits "because the city engineer's refusal to issue the permits . . . in no sense constituted egregious or arbitrary government conduct." *Id.* (citing *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998)). The Court's reliance on *Lewis*—a § 1983 case involving a substantive-due-process claim concerning an alleged police-involved wrongful death—is telling, as it would seem to foreclose any suggestion that a similar analysis is out-of-place when property (rather than life or liberty) is at issue. Quoting *Lewis*, the Court in *Buckeye* observed that in evaluating "abusive executive action . . . only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* (quoting *Lewis*, 523 U.S. at 846). Thus, it would seem, while our review of executive action in substantive-due-process cases must be exceedingly (and appropriately) deferential, that review is not nonexistent, such that challenges to executive action fail "regardless of how arbitrar[y] or irrational[]" that action may be. Maj. Op. at 21.

In the years since *Buckeye*, other circuits addressing land-use cases have acknowledged that executive acts *are* reviewable, even if under a deferential standard. *See, e.g.*, *Onyx Properties LLC v. Bd. of Cty. Comm'rs of Elbert Cty.*, 838 F.3d 1039, 1048–49 (10th Cir. 2016) (stating, in a zoning case, that "[w]hen analyzing executive action, 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense'") (quoting *Lewis*, 523 U.S. at 846); *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008) (holding that "[w]hen executive action like a discrete permitting decision is at issue, only 'egregious official conduct can be said to be "arbitrary in the constitutional sense"' . . . it must amount to an 'abuse of power' lacking any 'reasonable justification in the service of a legitimate governmental objective'" (quoting *Lewis,* 523 U.S. at 846 and citing *Buckeye*, 538 U.S. at 198)).

Again, though, this question—whether it makes sense to subject legislative but not executive action to (even minimal) scrutiny under the substantive component of the Due Process Clause—is one for another day. Today, *McKinney* controls, and (rightly or wrongly) that decision clearly holds, as the majority summarizes, that "executive action *never* gives rise to a substantive-due-process claim unless it infringes on a fundamental right." Maj. Op. at 2 (emphasis added). Under our precedent, Hillcrest's challenge to the Ordinance's application here does not implicate any fundamental right, and it clearly assails executive action. Accordingly, just as the majority says, its claim is DOA.

### III

For the foregoing reasons, I concur in the judgment of reversal.