[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13998
Non-Argument Calendar

_____

D.C. Docket No. 4:18-cv-00275-RH-CAS

ZOLTAN BARATI,

Plaintiff – Appellant,

versus

FLORIDA ATTORNEY GENERAL,
MOTOROLA SOLUTIONS, INC.,

Defendants – Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(July 12, 2021)

Before WILSON, LAGOA, and TJOFLAT, Circuit Judges.

PER CURIAM:

Plaintiff Zoltan Barati filed a complaint asserting various constitutional and civil rights claims against the Florida Attorney General and Motorola Solutions, Inc., in relation to the Attorney General's dismissal of the plaintiff's state-court *qui tam* action against Motorola.  The District Court dismissed the case, and we affirm.

## I.

### A.

According to the complaint, Motorola had a contract with the State of Florida to produce an automated fingerprint identification system ("AFIS") for the Florida Department of Law Enforcement.  *See State v. Barati* (*Barati I*), 150 So. 3d 810, 811 (Fla. 1st Dist. Ct. App. 2014).  The plaintiff is a former Motorola employee who was involved in technical quality control and contract compliance for the project.  The complaint alleges that the AFIS system failed to meet various contract requirements with regard to accuracy, processing speed, and other factors; for instance, the contract called for 99.9% accuracy but the product performed with only 99% accuracy.  The system also necessitated millions of dollars' worth of maintenance and technical support to "keep it on life support."  Despite this, Motorola "claimed full compliance [with] the State requirements of the AFIS product for payment."  The plaintiff raised his concerns about the alleged deficiencies through Motorola's internal complaint process.  Later, following the

2

transfer of the relevant Motorola division to another company, the plaintiff's

employment was terminated.

In 2009, the plaintiff brought a *qui tam* action against Motorola in state court

under the Florida False Claims Act ("FCA"), Florida Statutes § 68.081 *et seq.*  The

case eventually resulted in two opinions from the First District Court of Appeal

("DCA") in connection with the State's subsequent dismissal of the action, one of

which provides the following background information:

> The Florida False Claims Act authorizes a private person or the
> State to initiate a civil action against a person or company who
> knowingly presents a false claim to the State for payment. . . . The *qui
> tam* complaint is filed under seal and is not immediately served on the
> defendant, so that the Department of Legal Affairs, on behalf of the
> State, may investigate the allegations made in the complaint and
> decide if it wishes to become a party to the action. . . .
>
> After being served a copy of [Barati's] *qui tam* complaint and
> relevant materials, the State of Florida conducted an investigation,
> pursuant to section 68.083(3), Florida Statutes. The State declined to
> join the *qui tam* action, which Barati thereafter prosecuted for
> approximately three and a half years.

*Barati I*, 150 So. 3d at 811-12.  According to the complaint, the plaintiff conducted

discovery in the state-court case and successfully defended against a motion to

dismiss.  The case was scheduled for trial.  However, as the complaint also

explains, the project manager for the Department of Law Enforcement filed an

affidavit in February 2013 stating that he was pleased with the AFIS product.  The

complaint asserts that the project manager's affidavit contained a number of

3

inaccuracies or inconsistencies with Department "cabinet documents" showing that the system was inadequate.

In July 2013, the Attorney General filed a notice of voluntary dismissal of the *qui tam* action pursuant to § 68.084(2)(a) of the FCA. *See Barati I*, 150 So. 3d at 812. This section provided that the State "may voluntarily dismiss the action notwithstanding the objections of the person initiating the action." Fla. Stat. § 68.084(2)(a) (2009); *see Barati v. State* (*Barati II*), 198 So. 3d 69, 73 n.2 (Fla. 1st Dist. Ct. App. 2016). The plaintiff contested whether the notice of dismissal was automatically effective on the ground that the State had not intervened in the action and that a relator should be provided an opportunity to challenge such a dismissal. *Barati II*, 198 So. 3d at 71. The state trial court ruled that it had been divested of jurisdiction by the notice of dismissal, and the First DCA affirmed, holding as a matter of first impression that "the Attorney General's decision to terminate the litigation is unlimited by statute." *Id.* at 71-72, 78, 85. The Florida Supreme Court declined to grant review, *Barati v. State*, No. SC16-834, 2016 WL 4429843 (Fla. Aug. 22, 2016), and the United States Supreme Court denied certiorari, *Barati v. Florida*, 137 S. Ct. 1085 (2017).

The plaintiff also alleges that the Attorney General acted in concert with Motorola and that the defendants "conspired to dismiss the Qui Tam case." This is shown, according to the complaint, by Motorola's seeking a longer time for the

4

scheduled trial in the state trial court, filing an amicus brief at the First DCA that allegedly contained false statements and claimed that the plaintiff's case was frivolous, and giving donations "to candidates and committees helping to reelect Florida Department officials."

Furthermore, the plaintiff states that he was harmed as a consequence of the defendants' actions. In particular, the plaintiff suffered limited employment opportunities "because of the exposure of [the plaintiff as a] whistleblower," and apparently also on account of statements by Motorola to the press depicting the plaintiff's case as meritless. As a result, he became impoverished and was forced to sell his home by the threat of foreclosure, ultimately taking refuge with family outside of the United States.

B.

The plaintiff, proceeding *pro se*, filed this case in the District Court for the Northern District of Florida in 2018. His complaint, as amended, asserts thirteen counts, the first nine under the Due Process Clause or other Fourteenth Amendment provisions and the others under federal civil rights statutes.

A number of counts allege violations of substantive and procedural due process or raise related concepts of "rational basis test omission" or an "arbitrary and capricious" government action. Count V alleges the deprivation of a "vested

property interest . . . without due process," and count VI alleges a deprivation of the plaintiff's "liberty, the right to contract to engage in any of the common occupation[s] in life, a right to establish a home in the United States." In addition, count III asserts an equal protection violation in which the plaintiff was "singled out for adverse, irrational government action." And count IX alleges, among other things, that the plaintiff's "privileges and immunities are abridged."

Count X is brought under 42 U.S.C. § 1985(2) and alleges a "[c]onspiracy to interfere with civil rights," and in particular a conspiracy "to deter . . . the relator as a witness . . . from attending and testifying" in his state court suit. Count XI invokes § 1985(3) and alleges a deprivation of rights or privileges and an act in furtherance of a conspiracy "whereby another is injured in his person, liberty, or property, or deprived of having and exercising any right or privilege of a citizen of the United States." Finally, counts XII and XIII assert claims under 42 U.S.C. § 1983, including an allegation that the Florida Attorney General conspired or acted in concert with Motorola to injure the plaintiff and impede his lawsuit.

As remedies, the plaintiff seeks declaratory relief, compensatory damages for "measurable monetary loss" due to the forced sale of the plaintiff's home and other losses in the amount of $1,927,761, compensatory damages for "loss of reputation," emotional distress, and associated harms in the amount of $9,000,000, and punitive damages. The plaintiff also requests "an injunction to reinstate the

6

scheduled Qui Tam trial" and an injunction requiring the government to comply with the Fourteenth Amendment, apparently by showing a rational basis before dismissing a *qui tam* action.

The plaintiff's complaint was screened in the District Court in accordance with 28 U.S.C. § 1915(e)(2) as the plaintiff was proceeding *in forma pauperis*. The Magistrate Judge recommended dismissal, and the plaintiff filed objections to the report and recommendation. The District Court then dismissed the case for lack of jurisdiction based on the *Rooker-Feldman*[1] doctrine.

## II.

"[T]his Court may affirm the judgment of the district court on any ground supported by the record, regardless of whether that ground was relied upon or even considered by the district court." *Kernel Recs. Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012). We affirm the dismissal because the plaintiff's complaint failed to state a claim upon which relief may be granted.

At the core of the plaintiff's case is the assertion that the Attorney General's dismissal of his *qui tam* suit deprived him of a vested property interest, which could be construed as alleging a violation of the Takings Clause. However, a *qui*

---

[1] *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84, 125 S. Ct. 1517, 1521-22 (2005).

*tam* action under the Florida FCA that has not concluded in a final judgment does not constitute a vested property right belonging to the relator.  Under Florida law, as explained by the First DCA, "[t]he Legislature is the sole authority of all rights granted private relators to file and litigate *qui tam* actions."  *Barati II*, 198 So. 3d at 77.  The Attorney General, rather than the relator, is the real party in interest in such an action and holds the substantive right to maintain or dismiss the suit, which is brought in the name of the State.  *Id.* at 81-82, 84.  "[T]he relator is and always remains an assignee of the State's substantive right to prosecute a *qui tam* action, albeit an assignee with some procedural prerogatives strictly defined by positive law and in no manner arising out of a common law or constitutional substantive ground."  *Id.* at 81.  In short, insofar as the *qui tam* suit is considered property, *see id.* at 82, it is the property of the State and not the relator.  Likewise, "[i]n the analogous context of the [federal] False Claims Act, courts long ago rejected the argument that a constitutional protected property right vests upon initiating suit," and "it is of no moment that [the relator] expended effort and resources in filing and pursuing the complaint."  *Rogers v. Tristar Prods., Inc.*, 559 F. App'x 1042, 1045 (Fed. Cir. 2012).  There is hence no violation of the Takings Clause.

The plaintiff's due process claims fail for similar reasons.  "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."

8

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S. Ct. 2701, 2705 (1972). The complaint does not identify any government action taken by the State that has deprived the plaintiff of a protected interest in liberty or property.

With respect to property, while the Due Process Clause encompasses a broader range of property interests than those protected by the Takings Clause, *see Corn v. City of Lauderdale Lakes*, 95 F.3d 1066, 1075 (11th Cir. 1996), an interest can be considered property for due process purposes only if a person has "a legitimate claim of entitlement to it," *Roth*, 408 U.S. at 577, 92 S. Ct. at 2709. Property interests are created and defined "by existing rules or understandings that stem from an independent source such as state law" and that "support claims of entitlement." *Id.* In *Roth*, for instance, the Supreme Court considered the claim that a professor at a state university had a property interest in the renewal of his contract. The terms of his appointment, which "created and defined" his interest in employment, had no renewal provision, and there was no other state statute or university policy that secured a claim to renewal; hence, the Court held that the professor lacked a cognizable property interest in re-employment. *Id.* at 578, 92 S. Ct. at 2709-10. Here, likewise, any interest that the plaintiff had in the *qui tam* action was created and defined by the Florida FCA, which expressly provided that the State "may voluntarily dismiss the action notwithstanding the objections of the person initiating the action." Fla. Stat. § 68.084(2)(a) (2009). "[T]here is no

9

common-law right for a relator to file a *qui tam* action," *Barati II*, 198 So. 3d at 76, and the facts alleged in the complaint provide no basis for inferring the existence of any other rule or understanding that would secure a claim to continuation of the suit following the State's dismissal. Hence, the plaintiff did not have a legitimate claim of entitlement to prosecution of the *qui tam* action once the Attorney General dismissed it, and the State's action did not deprive him of a protected property interest.

With respect to liberty, there is clearly no freestanding liberty interest in maintaining a *qui tam* suit. The plaintiff alleges that the State deprived him of his liberty by infringing on his "right to contract to engage in any of the common occupation[s] in life" and "right to establish a home in the United States." The law recognizes the liberty of persons to engage in "the common occupations of life" and to "establish a home and bring up children." *Roth*, 408 U.S. at 572, 92 S. Ct. at 2707 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S. Ct. 625, 626 (1923)). However, the plaintiff has identified no action by which the State has deprived him of any such liberty interest. The State did not restrain the plaintiff from engaging in any occupation or contracting for any form of employment, and it did not compel him to leave the country. The complaint therefore fails to state any claim of a violation of procedural due process.

Substantive due process, on the other hand, primarily protects "fundamental" rights, though the analysis differs somewhat for executive action and legislative action. *McKinney v. Pate*, 20 F.3d 1550, 1556, 1557 n.9 (11th Cir. 1994) (en banc). There is nothing in this case to suggest that any fundamental right is implicated; in fact, the complaint states that it concerns a "non-fundamental right."[2] As we have held, "fundamental rights in the constitutional sense do not include 'state-created rights,'" *Hillcrest Prop., LLP v. Pasco Cnty.*, 915 F.3d 1292, 1297 (11th Cir. 2019) (quoting *McKinney*, 20 F.3d at 1560), and the purely statutory right to prosecute a suit under the FCA is certainly state-created. Hence, in regard to the executive action of dismissing the plaintiff's *qui tam* suit, there can be no substantive due process claim. *McKinney*, 20 F.3d at 1556 ("[A]reas in which substantive rights are created only by state law . . . are not subject to substantive due process protection under the Due Process Clause because

---

[2] The complaint also mentions "access to court at a meaningful time." To the extent that the complaint raises a substantive due process claim based on the fundamental right of access to courts, *see Tennessee v. Lane*, 541 U.S. 509, 533-34, 124 S. Ct. 1978, 1994 (2004), that claim would be without merit. An access to courts claim requires identification of a "nonfrivolous, arguable" "underlying cause of action" which the defendant's conduct prevented or is preventing the plaintiff from effectively pursuing. *Christopher v. Harbury*, 536 U.S. 403, 414-15, 122 S. Ct. 2179, 2186-87 (2002) (internal quotation marks omitted). Here, the plaintiff can no longer pursue his *qui tam* action against Motorola. In virtue of the State's dismissal of that suit, however, the plaintiff now has no cause of action against Motorola that could serve as the requisite underlying claim. The dismissal did not simply prevent litigation of an existing cause of action but rather eliminated the plaintiff's cause of action in its entirety. In particular, the right to bring the suit belongs to the State, with the relator being only an assignee, *Barati II*, 198 So. 3d at 81, and when the State filed the dismissal notice it effectively withdrew the assignment of the action to the plaintiff.

'substantive due process rights are created only by the Constitution.'" (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229, 106 S. Ct. 507, 515 (1985) (Powell, J., concurring))); *Hillcrest*, 915 F.3d at 1293, 1302.[3] In regard to legislative action, under substantive due process a statute not implicating a fundamental right is subject to rational basis review. *Kentner v. City of Sanibel*, 750 F.3d 1274, 1279-80 (11th Cir. 2014); *TRM Inc. v. United States*, 52 F.3d 941, 945-46 (11th Cir. 1995). To the extent, then, that the complaint challenges the constitutionality of the FCA provision allowing for dismissal by the State notwithstanding a relator's objection, substantive due process requires that this statute bear a rational relation to a legitimate governmental end. *TRM*, 52 F.3d at 946. This test is easily satisfied here. The statutory provision directly advances the State's interest in maintaining control of suits in which the State is the real party in interest and which aid in discharging the State's responsibility to safeguard the public purse against fraud and other unlawful practices. *Cf. Barati II*, at 78-80 (discussing separation-of-powers considerations). Since it is the State that is

---

[3] Under an alternative standard, substantive due process protects against executive action that is constitutionally arbitrary in that it "shocks the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47, 118 S. Ct. 1708, 1716-17 (1998). Insofar as this formulation requires further analysis, this high standard clearly is not met here. As explained below in our discussion of equal protection, there are rational bases on which the State could have dismissed the plaintiff's suit.

wronged by an assertedly false claim, the State has the right to choose what response should or should not be taken toward the party responsible.

We turn now to the plaintiff's equal protection claim. The complaint does not allege that the State discriminated against the plaintiff on account of any general characteristic such as race or nationality or membership in any social group; instead, the plaintiff simply alleges that he was "singled out" in an "arbitrary" and "irrational" fashion. The complaint thus seeks to raise what is known as a class-of-one equal protection claim, of the kind recognized in *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073 (2000) (per curiam). A government action challenged under a class-of-one theory is reviewed to determine whether there is a rational basis for any differential treatment of similarly situated persons. *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 602, 128 S. Ct. 2146, 2153 (2008). The class-of-one equal protection theory, however, does not apply to all forms of government action. The Supreme Court in *Engquist* held that it did not apply to public employment decisions, reasoning that the employment context "by [its] nature involve[s] discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Id.* at 603, 128 S. Ct. at 2154. We have likewise found the class-of-one theory inapplicable to a state agency's action of placing a credit union in conservatorship, on the ground that the agency's decision was a discretionary one, of a "complex and multidimensional" character, for which

13

it needed to "be able to take into account all of the relevant facts and circumstances of the individual cases before it." *Carruth v. Bentley*, 942 F.3d 1047, 1058 (11th Cir. 2019). The Attorney General's decision to dismiss a *qui tam* lawsuit is also an essentially discretionary determination that, for the same basic reasons as those comprehended in the notion of prosecutorial discretion, requires consideration of a complex set of facts pertinent to each individual case. Hence, we do not think that the dismissal decision is subject to a class-of-one equal protection challenge.

Furthermore, even if the class-of-one theory were applicable in this context, the decision to dismiss the plaintiff's *qui tam* action would pass the rational basis test. All that is necessary is that there be some conceivable reason supporting the government action. *See Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009). Such bases for the State's dismissal of the plaintiff's suit can be seen from the complaint. The case was set for, but had not yet proceeded to, trial. The government might have needed to devote resources to monitoring the trial that it avoided expending by dismissing the suit. *Cf. Swift v. United States*, 318 F.3d 250, 254 (D.C. Cir. 2003). Importantly, there are testimonial disputes in the case as to whether the AFIS system performed adequately, since the complaint itself indicates that the State's project manager stated in an affidavit that he was pleased with the system. Indeed, the complaint discloses a number of specific disagreements between the plaintiff's and the

project manager's positions concerning the contractor selection process, the applicable quality standards for the product, and any need for warranty work. The complaint also asserts that the State decided to repurchase an additional AFIS system from the company to which the relevant Motorola division was transferred, suggesting that the State may be continuing to work with the same entity or the same people that the plaintiff's suit alleged to be responsible for fraud. These conflicts in the evidence or its interpretation, as well as the possible need for an ongoing working relationship with those involved, are rational bases for the State to exercise its discretion to discontinue a false claims action and not seek to impose penalties on a contractor. If the State's officials think that a contractor's product is satisfactory or that it would be unwarranted or disadvantageous to allow prosecution of a *qui tam* suit brought in its name, it is the State's prerogative to dismiss the action in accordance with the statute. The plaintiff's equal protection claim therefore must fail.

Count IX of the complaint appears to allege a violation of the Privileges or Immunities Clause of the Fourteenth Amendment. This claim is unfounded. We are aware of no authority for the proposition that the privileges or immunities of a citizen of the United States encompass a right to maintain a *qui tam* action notwithstanding the State's statutorily authorized decision to dismiss it. *Cf. Saenz*

15

*v. Roe*, 526 U.S. 489, 502-04, 119 S. Ct. 1518, 1526-27 (1999) (right to travel);

*The Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 74-81 (1872).

Finally, the last four counts in the complaint allege violations of 42 U.S.C. § 1985(2)-(3) and § 1983.  Count X alleges a conspiracy to "deter . . . the relator as a witness . . . from attending and testifying during the due co[u]rse of justice" in the scheduled trial or a scheduled motion hearing in his *qui tam* suit.  The first clause of § 1985(2) imposes liability on persons who conspire to deter a witness "in any court of the United States" from attending or testifying in a proceeding in that court.  A state court is not a "court of the United States" within the meaning of this provision, *Seeley v. Bhd. of Painters*, 308 F.2d 52, 58 (5th Cir. 1962),[4] and therefore this clause is inapplicable here; in addition, the scheduled trial and motion hearing were lawfully canceled when the state trial court ruled that it was divested of jurisdiction over the case.  The second clause of § 1985(2) imposes liability on persons who "conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State" with intent to deny a citizen the equal protection of the laws or injure a citizen for enforcing rights to the equal protection of the laws.  No claim is stated under this clause either.  The State's dismissal of the plaintiff's *qui tam* action in accordance

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

16

with the terms of the statute under which it was brought does not, on the facts of the complaint, constitute obstruction of justice. A claim under this clause also requires that the conspiracy involve a racial or otherwise class-based discriminatory animus, *Bradt v. Smith*, 634 F.2d 796, 801 (5th Cir. Unit A Jan. 1981); *see Kush v. Rutledge*, 460 U.S. 719, 722-23, 725-26, 103 S. Ct. 1483, 1485-88 (1983), and no such animus is alleged here.

Count XI invokes § 1985(3) and alleges a "[d]epriv[ation] . . . of right[s] or privileges" in connection with a conspiracy causing injury or a deprivation of a right or privilege. Section 1985(3), in relevant part, proscribes conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," or for the purpose of preventing or hindering state authorities from securing the equal protection of the laws. This count fails to state a claim because this part of § 1985(3) again requires a racial or class-based animus not present in this case. *Bradt*, 634 F.2d at 801. The remaining two counts in the complaint are brought under § 1983, which imposes liability on persons who, under color of state law, deprive any person of "any rights, privileges, or immunities secured by the Constitution and laws." Section 1983 requires a deprivation of a right secured by federal law. *Bradt*, 634 F.2d at 799. As shown by our discussion of all the preceding counts, the complaint fails to state any claim

17

for the violation of any federal right, and therefore the § 1983 claims must fail as well.

The claims in this case are "wholly insubstantial and frivolous" such that they do not rise to the level of warranting the exercise of jurisdiction by a federal court. *Bell v. Hood*, 327 U.S. 678, 682-83, 66 S. Ct. 773, 776 (1946); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S. Ct. 1003, 1010 (1998). The District Court was accordingly right to dismiss the case for lack of jurisdiction.

**AFFIRMED.**